# Exhibit 1 to Notice of Removal

# Superior Court of Tattnall County Pleadings

# Summons and Complaint



*Personally Served
1-26-11 @ 2:06 Pm
TATTNALL COUNTY GA   (TjC)
FILED IN OFFICE*

*2010 DEC 31  AM 11: 50*

IN THE SUPERIOR COURT OF TATTNALL COUNTY, GEORGIA

*Debbie Crews
CLERK OF COURTS*

*C2011-01145*

| | |
|---|---|
| CYNTHIA LYNN INDIVIDUALLY, AND IN HER ) | |
| CAPACITY AS EXECUTOR OF THE ESTATE ) | |
| OF MRS. LOIS FINDLEY LYNN, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | CIVIL ACTION FILE NO. 2010-V-656-RR |
| ) | |
| US BANK NATIONAL ASSOCIATION, AS ) | |
| CUSTODIAN/TRUSTEE , ASSIGNEE OF ) | |
| LEND LEASE AGRI-BUSINESS, INC., ) | |
| WALLACE D. JARRIEL AND C. ALAN SIKES ) | |
| ) | |
| Defendants. ) | |

## SUMMONS

US BANK NATIONAL ASSOCIATION
US BanCorp Center
800 Nicollet Mall, Suite 200
Minneapolis, Minnesota 55402

**TO THE ABOVE NAMED DEFENDANT:**
You are hereby summoned and required to file with the Clerk of said Court and serve upon plaintiff's attorney, whose name and address is:

> David N. Dreyer
> Chamberlain, Hrdlicka, White, Williams & Martin
> 191 Peachtree Street, N.E. – 34th Floor
> Atlanta, Georgia 30303-1747
> (404) 659-1410

An answer to the complaint which is herewith served upon you, within 30 days after service of this summons upon you, exclusive of the day of service. **IF YOU FAIL TO DO SO, JUDGMENT BY DEFAULT WILL BE TAKEN AGAINST YOU FOR THE RELIEF DEMANDED IN THE COMPLAINT.**

This 31 day of December, 2010

Honorable Debbie Crews
Clerk of Superior Court

By: _Georgie S Weathers_
Deputy Clerk

## IN THE SUPERIOR COURT OF TATTNALL COUNTY
## STATE OF GEORGIA

| | | |
|---|---|---|
| CYNTHIA LYNN, INDIVIDUALLY, AND IN HER CAPACITY AS EXECUTOR OF THE ESTATE OF MRS. LOIS FINDLEY LYNN | ) ) ) ) ) | CIVIL ACTION NO. 2010-V-656-RR |
| Plaintiff, | ) ) ) | **JURY TRIAL DEMANDED** |
| v. | ) ) | |
| US BANK NATIONAL ASSOCIATION, AS CUSTODIAN/TRUSTEE, ASSIGNEE OF LEND LEASE AGRI-BUSINESS, INC., WALLACE D. JARRIEL AND C. ALAN SIKES | ) ) ) ) ) | |
| Defendants. | ) ) ) | |

## COMPLAINT OF PLAINTIFF CYNTHIA LYNN, INDIVIDUALLY, AND IN HER CAPACITY AS EXECUTOR OF THE ESTATE OF MRS. LOIS FINDLEY LYNN

COME NOW Cynthia Lynn, individually ("Plaintiff Cynthia Lynn"), and in her capacity as Executor of the Estate ("Executor Cynthia Lynn") of Lois Findley Lynn ("Mrs. Lois Lynn") and files this "Complaint of Plaintiff Cynthia Lynn, Individually, and in her capacity as Executor of the Estate of Mrs. Lois Findley Lynn" ("Complaint") against Defendants US Bank National Association, as Custodian/Trustee, assignee of Lend Lease Agri-Business, Inc. ("Defendant US Bank"), Wallace D. Jarriel ("Defendant Jarriel") and C. Alan Sikes ("Defendant

Sikes") (collectively "Defendants") and respectfully show the Court as follows:

## **Parties, Venue and Jurisdiction**

### 1.

Plaintiff Cynthia Lynn, individually, is a citizen of the State of Georgia, and resides in Tattnall County, Georgia.

### 2.

Mrs. Lois Lynn was a citizen of the State of Georgia, and resided at 4021 Old Collins Road, Collins, Georgia 30421, Tattnall County, until her death on June 21, 2010.

### 3.

Executor Cynthia Lynn was appointed by the Tattnall County Probate Court as Temporary Administrator of the Estate of Mrs. Lois Lynn on September 28, 2010, and Executor of the Estate of Mrs. Lois Lynn, on December 15, 2010.

### 4.

Defendant US Bank, a nationally chartered mortgage banking association, is incorporated in the State of Minnesota and has its principal place of business at 800 Nicollet Mall, Minneapolis, Minnesota. Defendant US Bank may be served by serving its agents at its principal place of business.

### 5.

Defendant US Bank is subject to jurisdiction in Georgia because: (i) US Bank transacted business within Georgia, namely by purporting to hold, through

assignments, the June 23, 2003 Promissory Note ("June 23, 2003 Promissory Note") from Mrs. Lois Lynn in favor of Lend Lease Agri-Business, Inc. ("Lend Lease Agri-Business"), attached hereto as Exhibit "A", and the June 23, 2003 Security Deed ("June 23, 2003 Security Deed") from Mrs. Lois Lynn and Plaintiff Cynthia Lynn in favor of Lend Lease Agri-Business, attached hereto as Exhibit "B"; (ii) US Bank foreclosed upon the June 23, 2003 Security Deed in Tattnall County, Georgia, on November 2, 2010 ("Foreclosure"); (iii) Defendant US Bank committed the tortious act of wrongful foreclosure within the State of Georgia; and (iv) Defendant US Bank committed the tortious act of wrongful foreclosure, which resulted in an injury in the State of Georgia.

6.

Defendant Jarriel is a citizen of Georgia and resides in Tattnall County, Georgia. Defendant Jarriel may be personally served at his residence at 104 David Jarriel Lane, Collins, Tattnall County, Georgia, 30421.

7.

Defendant Sikes is a citizen of Georgia and resides in Tattnall County, Georgia. Defendant Sikes may be personally served at his residence at 2999 Old Collins-Cobbtown Road, Collins, Tattnall County, Georgia 30421.

8.

This Court has jurisdiction to grant declaratory judgment relief and all

further necessary and proper relief to implement declaratory judgment relief, pursuant to the provisions of O.C.G.A. § 9-4-2 et seq.

9.

Venue is proper pursuant to O.C.G.A. § 9-10-93 for reasons including: (i) a substantial part of the events or omissions giving rise to the claim against Defendant US Bank occurred in Tattnall County, Georgia, including the Foreclosure; (ii) the six tracts comprising the 680.07 acres of real property ("Property") that were the subject of the Foreclosure, which are more particularly described in Exhibit "L" to the June 23, 2003 Security Deed, attached hereto as Exhibit "B", are located in Tattnall County, Georgia; and (iii) Defendants Jarriel and Sikes are residents of Tattnall County, Georgia and can be served with this Complaint at the addresses set forth above.

### Facts Common to All Counts

10.

For over 60 years, Mrs. Lois Lynn, doing business as Lynndale Farms, actively farmed all or a portion of the Property with her children, until approximately three years ago when she suffered several strokes, which along with a heart ailment, left her disabled. Mrs. Lois Lynn died on June 21, 2010, at age 87, from a head injury suffered in a fall at her residence on the Property.

11.

On June 23, 2003, to provide needed capital to permit farming of the

-4-

Property, Mrs. Lois Lynn exectued the June 23, 2003 Promissory Note in the amount of $527,000.00 in favor of Lend Lease Agri-Business. Defendant US Bank has alleged that it was eventually assigned the June 23, 2003 Promissory Note.

12.

Simultaneous with execution of the June 23, 2003 Promissory Note, Mrs. Lois Lynn and Plaintiff Cynthia Lynn executed the June 23, 2003 Security Deed, as Grantor, pledging the Property to Lend Lease Agri-Business, as Grantee, as security for the June 23, 2003 Promissory Note. Defendant US Bank has alleged that it was assigned the June 23, 2003 Security Deed through the June 23, 2003 Assignment of Security Deed and the October 15, 2003 Assignment of Security Deed.

13.

Plaintiff Cynthia Lynn executed the June 23, 2003 Security Deed because she owned one-half interest in 57.51 acres, more fully described as "Tract Six" in Exhibit "L" to the June 23, 2003 Security Deed, of the 680.07 acres comprising the Property. Mrs. Lois Lynn owned the other one-half interest in Tract Six, and solely owned the remaining 622.56 acres of the Property until her death.

14.

The June 23, 2003 Security Deed provides that:

> Upon the occurrence of an Event of Default, Lender shall
> have the following rights, powers, and remedies:
>
> . . . .
>
> **Power of Sale**. Lender may sell the Property, or any part
> thereof or any interest therein, separately, at Lender's
> discretion, with or without taking possession thereof, at
> public sale before the courthouse door of the county in
> which the Property, or any part thereof is located, to the
> highest bidder for cash . . . .
>
> Lender may hold one or more sales hereunder until the
> Indebtednes has been satisfied in full.

June 23, 2003 Security Deed, Exhibit "B", p. 5 (emphasis original).  An "Event of

Default" includes the failure "to make a payment when due under the

Indebtedness." *Id.* at p. 4.

15.

From 2003 until May 2008, Mrs. Lois Lynn was occasionally late in making

certain payments pursuant to the June 23, 2003 Promissory Note due to

unfavorable business cycles in the farming industry; however, Mrs. Lois Lynn

made late payments to the applicable holder of the June 23, 2003 Promissory Note,

which late payments were accepted by the holder without declaration of default.

16.

On May 2, 2008, Mrs. Lois Lynn and Plaintiff Cynthia Lynn, doing business

as Lynndale Farms, filed a Chapter 12 Bankruptcy proceeding in the United States

Bankruptcy Court, Southern District of Georgia, Statesboro Division, Case No. 08-

60264-LWD, because of the impact of Mrs. Lois Lynn's failing health on the farming business.  On March 27, 2009, the United States Bankruptcy Court for the Southern District of Georgia entered its Order Confirming Chapter 12 Plan ("Chapter 12 Plan"), copies of which are attached hereto as Exhibit "M", but Mrs. Lois Lynn was unable to make the required payments because her health did not sufficiently improve to permit her to resume farming the Property, which the Chapter 12 Plan relied upon as a source to repay creditors.

17.

On May 3, 2010, Lend Lease Agri-Business sent Mrs. Lois Lynn and Plaintiff Cynthia Lynn a letter ("May 3, 2010 Letter"), attached hereto as Exhibit "C", alleging that the June 23, 2003 Promissory Note and June 23, 2003 Security Deed were in default for "failure to make the annual payment due on March 15, 2010", among other things, and Lend Lease Agri-Business would "enforce the terms of the Promissory Note and Security Deed in favor of Lend Lease Agri-Business, Inc."  Defendant US Bank, purported holder of the June 23, 2003 Security Deed, was not a signatory to the May 3, 2010 Letter and was not referenced in the May 3, 2010 Letter.

18.

Because of Mrs. Lois Lynn's inability to comply with the Chapter 12 Plan, and at Lend Lease Agri-Business's request, the bankruptcy stay applicable to the

June 23, 2003 Security Deed and the Property was lifted on June 8, 2010.

19.

On June 9, 2010, and then on June 24, 2010, after Mrs. Lois Lynn's death, Defendant US Bank sent Mrs. Lois Lynn and Plaintiff Cynthia Lynn letters ("June 2010 Letters"), both stating that "[t]he debt secured by [the June 23, 2003 Security Deed] has been and is hereby declared due because of non-payment of said loan", and "foreclosure proceedings have been initiated to exercise a power of sale contained in the Security Deed executed by you on June 23, 2003 . . . ." The June 2010 Letters, attached hereto as Exhibits "D" and "E", also state that "[t]his is an attempt to collect a debt and any information obtained will be used for that purpose" and attaches an advertisement for a foreclosure sale of the Property scheduled for August 3, 2010 ("August 2010 Foreclosure Advertisement"), which was "submitted to the publisher of the Glennville Sentinel". At the time of delivery of the June 9, 2010 letters, Mrs. Lois Lynn was incompetent as a result of several strokes she had suffered, in addition to advanced Alzheimer's Disease; however no guardian of her person or property had yet been appointed. At the time of delivery of the June 24, 2010 letter, Mrs. Lois Lynn was deceased.

20.

Pursuant to the June 2010 Letters, Defendant US Bank caused the August 2010 Foreclosure Advertisement to be published in the Glennville Sentinel on July

-8-

8, 15, 22 and 29, 2010, attached hereto as Exhibit "F".

21.

Rather than foreclose on all or any part of the Property on August 3, 2010, as scheduled, Defendant US Bank did not proceed with the August 3, 2010, scheduled foreclosure proceedings.

22.

On September 21, 2010, Defendant US Bank sent Mrs. Lois Lynn and Plaintiff Cynthia Lynn another letter ("September 21, 2010 Letter"), stating that "[t]he debt secured by [the June 23, 2003 Security Deed] has been and is hereby declared due because of non-payment of said loan", and "foreclosure proceedings have been initiated to exercise a power of sale contained in the Security Deed executed by you on June 23, 2003 . . . ."  The September 21, 2010 Letter, attached hereto as Exhibit "G", also states that "[t]his is an attempt to collect a debt and any information obtained will be used for that purpose" and attaches an advertisement for a foreclosure sale of the Property scheduled for November 2, 2010 ("November 2010 Foreclosure Advertisement"), which was "submitted to the publisher of the Glennville Sentinel".

23.

At the time the September 21, 2010 Letter was attempted to be delivered to Mrs. Lois Lynn, she was deceased, and her estate was not represented by a duly

appointed Executor or Administrator, for reasons set forth below.

24.

Pursuant to the September 21, 2010 Letter, Defendant US Bank caused the November 2010 Foreclosure Advertisement to be published in the Glennville Sentinel on October 7, 14, 21 and 28, 2010, attached hereto as Exhibit "H".

25.

On May 9, 1988, Mrs. Lois Lynn executed her Last Will and Testament, attached hereto as Exhibit "I", naming her daughter, Cynthia Lynn, as Executor of the Estate of Mrs. Lois Lynn.

26.

Following Mrs. Lois Lynn's death, Cynthia Lynn directed the filing of the Petition to Probate Will in Solemn Form ("Petition to Probate Will"), attached hereto as Exhibit "J"; however, because of delays in obtaining all five of Mrs. Lois Lynn's children's signatures, Cynthia Lynn was appointed Temporary Administrator of the Estate of Mrs. Lois Lynn on September 28, 2010, and was not appointed Executor of the Estate of Mrs. Lois Lynn until December 15, 2010.

27.

Even before being appointed Temporary Administrator of the Estate of Mrs. Lois Lynn, Executor Cynthia Lynn contacted Defendant US Bank through Mr. Rod Avey, who the June 2010 Letters and September 21, 2010 Letter designated as

-10-

authorized to negotiate and amend the June 23, 2003 Security Deed, about satisfying the June 23, 2003 Promissory Note.  Executor Cynthia Lynn informed Mr. Avey that she would fully satisfy the June 23, 2003 Promissory Note from the proceeds of Mrs. Lois Lynn's life insurance policies, including policies with Minnesota Life Insurance Company and the Hartford Financial Services Group, Inc., which proceeds would total $750,000 and would be more than sufficient to satisfy the amount Defendant US Bank claimed was due under the June 23, 2003 Promissory Note.  Executor Cynthia Lynn also informed Mr. Avey that the proceeds of Mrs. Lois Lynn's life insurance policies would be received after she was appointed Executor of the Estate of Mrs. Lois Lynn and the necessary paperwork was processed.

28.

Notwithstanding these communications, Defendant US Bank proceeded with the Foreclosure on November 2, 2010, and then executed the Deed Under Power of Sale, attached hereto as Exhibit "K", conveying the Property to Defendant Jarriel for $663,000.00, or $974.89 an acre.

29.

On November 17, 2010, Defendant Jarriel conveyed 319.67 acres of the 680.07 total acres comprising the Property to Defendant Sikes for $311,700.00, or $975 per acre, the same price Defendant Jarriel paid for the Property.

-11-

30.

The true market value for the Property was over $3,000 an acre for the unimproved land, and approximately an additional $150,000 for the residence located on the Property.

31.

On June 10, 2009, William Harvey Jarriel sold 22.86 acres of comparable unimproved land within two miles of the Property to Defendant Jarriel for $69,158.00, or $3,025.28 an acre.

32.

On July 14, 2010, Jane R. Grace sold 31.28 acres of comparable land ("Grace Comparable Property") within 100 yards of the Property to Ty R. Powell for $194,950.00.  The Tattnall County Tax Assessor's Office estimates that the unimproved land comprised 49% of the value of the Grace Comparable Property, which is $95,500 of the total purchase price, or $3,053.07 an acre.

33.

On October 4, 2010, Plaintiff Cynthia Lynn, as Temporary Administrator of the Estate of Lois Lynn, sold 83.25 acres of comparable unimproved land within two miles of the Property to Michael C. Collins for $3,000.00 an acre.

34.

Defendant Jarriel and Defendant Sikes both own farms adjacent to the

-12-

Property and are aware that the true market value of the Property was over $3,000 an acre.

35.

Upon information and belief, Defendant Jarriel and Defendant Sikes colluded in a manner which resulted in chilling of the bidding at the Foreclosure sale.

36.

On November 19, 2010 ("November 19, 2010 Letter"), Lester M. Castellow, attorney with Moore, Tyndall, Castellow & Strickland, LLP, acting as counsel for Defendant Jarriel and Defendant Sikes, wrote to Plaintiff Cynthia Lynn and demanded that she vacate the Property.   Mr. Castellow and Moore, Tyndall, Castellow & Strickland, LLP, also wrote the May 3, 2010 Letter, on behalf of Lend Lease Agri-Business, and wrote the June 2010 Letters and September 21, 2010 Letters, conducted the Foreclosure of the Property, and prepared the November 2, 2010 Deed Under Power of Sale on behalf of Defendant US Bank.

37.

On December 15, 2010, after all of Mrs. Lois Lynn's five children executed the Petition to Probate Will, Executor Cynthia Lynn was granted the Letters Testamentary, attached as Exhibit "L", and appointed Executor of the Estate of Mrs. Lois Lynn. Executor Cynthia Lynn is diligently seeking the proceeds of Mrs.

Lois Lynn's life insurance policies and expects full payment of all insurance proceeds to which Executor Cynthia Lynn is entitled within the next two months.

### COUNT I
### Complaint for Declaratory Judgment that the Foreclosure Was Invalid Because the Debt on the June 23, 2003 Promissory Note Is Not Due Until June 15, 2011 Pursuant to O.C.G.A. § 53-7-42(a)

38.

Plaintiff Cynthia Lynn and Executor Cynthia Lynn, repeat and reallege paragraphs 1 through 37 of this Complaint as fully as if said allegations were set forth verbatim herein.

39.

Any purported debt of the Estate of Mrs. Lois Lynn, including the alleged debt pursuant to the June 23, 2003 Promissory Note, is not yet due because Executor Cynthia Lynn, is not "required to pay the debts of the estate, wholly or in part, until six months from the date of qualification of the first personal representative to serve", pursuant to O.C.G.A. § 53-7-42(a).

40.

Executor Cynthia Lynn was not appointed Executor of Plaintiff Estate of Cynthia Lynn until December 15, 2010; thus, Plaintiff Cynthia Lynn is not obligated to pay any debts of the Estate of Mrs. Lois Lynn, including the alleged debt pursuant to the June 23, 2003 Promissory Note, until June 15, 2011.

-14-

41.

The June 23, 2003 Security Deed does not permit the holder of the June 23, 2003 Security Deed to enforce the power of sale provisions in the June 23, 2003 Security Deed unless there has been an event of default.

42.

The only alleged events of default are non-payment of amounts claimed to be due.

43.

Because the debt of Mrs. Lois Lynn, secured by the Security Deed, is not past due under the June 23, 2003 Promissory Note and applicable law, no event of default exist which can be the basis of a legal and fair exercise of the power of sale in the Security Deed.

44.

Defendant US Bank conducted the Foreclosure even though the June 23, 2003 Promissory Note was not past due under applicable law, and June 23, 2003 Security Deed was therefore not in default.

45.

As a result of the actual and justiciable controversy set forth above, Plaintiff Cynthia Lynn and Executor Cynthia Lynn are rendered uncertain with respect to their rights, status, duties, obligations and legal relations with Defendant US Bank respecting the June 23, 2003 Promissory Note, June 23, 2003 Security Deed and

the Property.

46.

Plaintiff Cynthia Lynn and Executor Cynthia Lynn are in need of and entitled to a Declaratory Judgment that:

(a)     In contravention of the June 23, 2003 Promissory Note and June 23, 2003 Security Deed, Defendant US Bank conducted the Foreclosure of the Property when no payments were due on the June 23, 2003 Promissory Note, and June 23, 2003 Security Deed was not in default;

(b)     No debt is due under the June 23, 2003 Promissory Note until June 15, 2011, pursuant to O.C.G.A. § 53-7-42; and

(c)     The Foreclosure is null and void.

47.

Plaintiff Cynthia Lynn and Executor Cynthia Lynn are entitled to recover their expenses of litigation, including attorneys fees, for reasons including that Defendant US Bank has acted in bad faith, has been stubbornly litigious, and has caused unnecessary trouble and expense within the meaning of O.C.G.A. § 13-6-11; the amount of expenses of litigation, including attorneys fees, to which Plaintiff Cynthia Lynn and Executor Cynthia Lynn are entitled will be specified by amendment prior to trial, but in any event are not less than $50,000.00.

-16-

WHEREFORE Plaintiff Cynthia Lynn and Executor Cynthia Lynn pray:

(1)    that this action be tried by jury;

(2)    that after jury trial, this Court enter Declaratory Judgment that:

    (a)    In contravention of the June 23, 2003 Promissory Note and June 23, 2003 Security Deed, Defendant US Bank conducted the Foreclosure of the Property when no debt was due and the June 23, 2003 Promissory Note and June 23, 2003 Security Deed were not in default;

    (b)    No debt is due under the June 23, 2003 Promissory Note until June 15, 2011, pursuant to O.C.G.A. § 53-7-42; and

    (c)    The Foreclosure is null and void.

(3)    that Plaintiff Cynthia Lynn and Executor Cynthia Lynn be awarded reasonable expenses of litigation, including attorneys' fees in an amount to be specified by amendment, but in any event not less than $50,000.00;

(4)    that all costs of this action be taxed against Defendant US Bank; and

(5)    that the Court grant such other and further relief as is just and proper.

**COUNT II**
**Complaint for Declaratory Judgment that the Foreclosure Was Invalid**
**Because the June 23, 2003 Promissory Note Was Reinstated**
**Pursuant to O.C.G.A. § 44-14-85**

48.

Plaintiff Cynthia Lynn and Executor Cynthia Lynn, repeat and reallege paragraphs 1 through 46 of this Complaint as fully as if said allegations were set forth verbatim herein.

49.

O.C.G.A. § 44-14-85 provides that "if foreclosure proceedings are withdrawn prior to their completion . . . [s]uch withdrawal shall operate to rescind the acceleration of the maturity of the indebtedness and to reinstate the indebtedness upon the terms and conditions existing prior to the acceleration".

50.

Defendant US Bank failed to conduct the foreclosure proceedings on the Property scheduled for August 3, 2010, which Defendant US Bank noticed in the June 2010 Letters and in the August 2010 Foreclosure Advertisement, constituting a withdrawal of the August 3, 2010 foreclosure sale of the Property.

51.

The withdrawal of the foreclosure proceeding on the Property scheduled for August 3, 2010 had the effect of reinstating the June 23, 2003 Promissory Note and June 23, 2003 Security Deed and cured any purported default of the June 23, 2003

-18-

Promissory Note and June 23, 2003 Security Deed, existing as of the time of the reinstatement.

52.

The next payment pursuant to the June 23, 2003 Promissory Note, and the Chapter 12 Plan is not due until March 15, 2011, attached hereto as Exhibits "A", "C" and "M", respectively.

53.

Since reinstatement of the indebtedness evidenced by the June 23, 2003 Promissory Note, no amounts have come due under the June 23, 2003 Promissory Note, and the June 23, 2003 Promissory Note and June 23, 2003 Security Deed have not been in default since the reinstatement set forth above.

54.

Defendant US Bank conducted the Foreclosure even though the June 23, 2003 Promissory Note and June 23, 2003 Security Deed were not in default, in contravention of the June 23, 2003 Promissory Note and June 23, 2003 Security Deed.

55.

As a result of the actual and justiciable controversy set forth above, Plaintiff Cynthia Lynn and Executor Cynthia Lynn are rendered uncertain with respect to their rights, status, duties, obligations and legal relations with Defendant US Bank respecting the June 23, 2003 Promissory Note, June 23, 2003 Security Deed and

-19-

the Property.

56.

Plaintiff Cynthia Lynn and Executor Cynthia Lynn are in need of and entitled to a Declaratory Judgment that:

(a)   Pursuant to O.C.G.A. § 53-7-42, no payments are or have been due under the June 23, 2003 Promissory Note because the June 23, 2003 Promissory Note and the June 23, 2003 Security Deed were reinstated and any purported default of the June 23, 2003 Promissory Note and the June 23, 2003 Security Deed was cured because the foreclosure proceedings scheduled for August 3, 2010 were withdrawn;

(b)   Defendant US Bank conducted the Foreclosure of the Property in contravention of the June 23, 2003 Promissory Note and the June 23, 2003 Security Deed and applicable law, when no debt was due and the June 23, 2003 Promissory Note and June 23, 2003 Security Deed were not in default; and

(c)   The Foreclosure is null and void.

57.

Plaintiff Cynthia Lynn and Executor Cynthia Lynn are entitled to recover their expenses of litigation, including attorneys fees, for reasons including that Defendant US Bank has acted in bad faith, has been stubbornly litigious, and has

caused unnecessary trouble and expense within the meaning of O.C.G.A. § 13-6-11; the amount of expenses of litigation, including attorneys fees, to which Plaintiff Cynthia Lynn and Executor Cynthia Lynn are entitled will be specified by amendment prior to trial, but in any event are not less than $50,000.00.

WHEREFORE Plaintiff Cynthia Lynn and Executor Cynthia Lynn pray:

(1)  that this action be tried by jury;

(2)  that after jury trial, this Court enter Declaratory Judgment that:

(a)  Pursuant to O.C.G.A. § 53-7-42, no payments are or have been due under the June 23, 2003 Promissory Note because the June 23, 2003 Promissory Note and the June 23, 2003 Security Deed were reinstated and any purported default of the June 23, 2003 Promissory Note and the June 23, 2003 Security Deed was cured because the foreclosure proceedings scheduled for August 3, 2010 were withdrawn;

(b)  Defendant US Bank conducted the Foreclosure of the Property in contravention of the June 23, 2003 Promissory Note and the June 23, 2003 Security Deed and applicable law, when no debt was due and the June 23, 2003 Promissory Note and June 23, 2003 Security Deed were not in default; and

(c)  The Foreclosure is null and void.

-21-

(3)     that Plaintiff Cynthia Lynn and Executor Cynthia Lynn be awarded reasonable expenses of litigation, including attorneys' fees in an amount to be specified by amendment, but in any event not less than $50,000.00;

(4)     that all costs of this action be taxed against Defendant US Bank; and

(5)     that the Court grant such other and further relief as is just and proper.

## COUNT III
## Complaint for Monetary Damages

58.

Plaintiff Cynthia Lynn and Executor Cynthia Lynn repeat and reallege paragraphs 1 through 57 of this Complaint as fully as if said allegations were set forth verbatim herein.

59.

Defendant US Bank, as purported holder of the June 23, 2003 Security Deed, owed Plaintiff Cynthia Lynn and Executor Cynthia Lynn a duty to fairly exercise the power of sale provisions in the June 23, 2003 Security Deed.

60.

Defendant US Bank breached its duty to fairly exercise the power of sale provision in the June 23, 2003 Security Deed by foreclosing on the Property when the June 23, 2003 Promissory Note and June 23, 2003 Security Deed were not in default.

-22-

61.

Defendant US Bank breached its duty to fairly exercise the power of sale provision in the June 23, 2003 Security Deed by selling the Property at the Foreclosure for a grossly inadequate sales price accompanied by fraud, mistake, misapprehension, surprise or other circumstances authorizing a finding that such circumstances contributed to bringing about the grossly inadequate sales price, including but not limited to, selling the Property to a buyer who was colluding with another prospective buyer to artificially lower the Foreclosure sales price and by failing to offer the six individual tracts comprising the Property for sale separately.

62.

As a result of Defendant US Bank's breach of its duty to fairly exercise the power of sale provision in the June 23, 2003 Security Deed, Plaintiff Cynthia Lynn and Executor Cynthia Lynn have suffered actual damages in an amount equal to the difference between the Foreclosure sales price of the Property of $974.89 per acre and the true market value of Property of $3,000.00 per acre, or $1,377,210.00 for the 680.07 total acres comprising the Property.

63.

Defendant US Bank's acts and conduct as set forth above were intentional and were done in conscious and callous disregard of Plaintiff Cynthia Lynn and Executor Cynthia Lynn's rights and Defendant US Bank's obligations, such that

-23-

Plaintiff Cynthia Lynn and Executor Cynthia Lynn are entitled to recover punitive damages. Because Defendant US Bank's acts and conduct were done with specific intent to cause harm, the $250,000.00 limit on punitive damages as set forth in O.C.G.A. § 51-12-5.1 does not apply to limit recovery of punitive damages. Consequently, Plaintiff Cynthia Lynn and Executor Cynthia Lynn seek and are entitled to recover punitive damages in an amount to be determined by the jury, but in any event, not less than $1,000,000.00.

64.

Plaintiff Cynthia Lynn and Executor Cynthia Lynn are entitled to recover their expenses of litigation, including attorneys fees, for reasons including that Defendant US Bank has acted in bad faith, has been stubbornly litigious, and has caused unnecessary trouble and expense within the meaning of O.C.G.A. § 13-6-11 and has engaged in intentionally wrongful conduct; the amount of expenses of litigation, including attorneys fees, to which Plaintiff Cynthia Lynn and Executor Cynthia Lynn are entitled will be specified by amendment prior to trial, but in any event are not less than $50,000.00

WHEREFORE Plaintiff Cynthia Lynn and Executor Cynthia Lynn pray:

(1)     that this action be tried by jury;

(2)     That Plaintiff Cynthia Lynn and Executor Cynthia Lynn recover actual damages in an amount to be determined by the jury, but in any

-24-

event not less than $1,377,210.00;

(3)   That Plaintiff Cynthia Lynn and Executor Cynthia Lynn recover punitive damages in an amount to be determined by the jury, but in any event not less than $1,000,000.00;

(4)   that Plaintiff Cynthia Lynn and Executor Cynthia Lynn be awarded reasonable expenses of litigation, including attorneys' fees, in an amount to be specified by amendment, but in any event not less than $50,000.00;

(5)   that all costs of this action be taxed against Defendant US Bank; and

(6)   that the Court grant such other and further relief as is just and proper.

Dated this 30th day of December, 2010

Respectfully submitted,

By: _____

JIMMY L. PAUL
*Georgia Bar No. 567600*
DAVID N. DREYER
*Georgia Bar No. 141322*

Chamberlain, Hrdlicka, White, Williams & Martin
191 Peachtree Street, N.E., 34th Floor
Atlanta, Georgia 30303-1747
(404) 659-1410
(404) 659-1852 (facsimile)
jimmy.paul@chamberlainlaw.com
david.dreyer@chamberlainlaw.com

*Counsel for Cynthia Lynn, Individually, and In Her Capacity As Executor of The Estate of Mrs. Lois Findley Lynn*

-25-

EXHIBIT "A"

**Lend Lease**
AGRI-BUSINESS

# PROMISSORY NOTE

| Principal | Loan Date | Maturity | Loan No | Call / Coll | Account | Officer | Initials |
|---|---|---|---|---|---|---|---|
| $527,000.00 | 06-23-2003 | 07-01-2018 | | | | 0301111 | |

References in the shaded area are for Lender's use only and do not limit the applicability of this document to any particular loan or item.
Any item above containing "****" has been omitted due to text length limitations.

| Borrower: | Lois F. Lynn | | Lender: | LEND LEASE AGRI-BUSINESS, INC. |
| | ~~Redacted~~  Redacted | | | 12747 Olive Street Road |
| | Collins, GA 30421 | | | Suite 360 |
| | | | | St. Louis, MO 63141 |

**Principal Amount: $527,000.00**                                   **Date of Note: June 23, 2003**

**PROMISE TO PAY.** Lois F. Lynn ("Borrower") promises to pay to LEND LEASE AGRI-BUSINESS, INC. ("Lender"), or order, in lawful money of the United States of America, the principal amount of Five Hundred Twenty-seven Thousand & 00/100 Dollars ($527,000.00), together with interest at the rate of 5.200% per annum on the unpaid principal balance from June 23, 2003, until paid in full.

**PAYMENT.** Borrower will pay this loan in accordance with the following payment schedule:

See repayment terms as shown in Exhibit "A".

Unless otherwise agreed or required by applicable law, payments will be applied first to accrued unpaid interest, then to principal, and any remaining amount to any unpaid collection costs. Borrower will pay Lender at Lender's address shown above or at such other place as Lender may designate in writing.

**PREPAYMENT PENALTY.** Upon prepayment of this Note, Lender is entitled to the following prepayment penalty: Borrower agrees, upon the payment of the principal amount of this Note (in whole or in part), before its scheduled payment date and before the Yield Maintenance Date (as defined below), whether such payment occurs voluntarily or involuntarily. Borrower shall (except in connection with any prepayment that requires, with the Lender's approval, as a result of the application to the Security Instrument of hazard insurance proceeds or condemnation award proceeds), pay to the Lender a yield maintenance amount ( the Yield Maintenance Amount) equal to the greater of:

(a) One percent of the amount of the principal payment; and

(b) An amount calculated by multiplying:

(i) the difference, expressed as a decimal calculated to five (5) digits and divided by the number of payment periods per year, between the interest rate payable on this Note ( net of all servicing fee rates) and the Treasury Rate (defined below); times

(ii) the amount of the principal prepayment; times

(iii) the present value factor, calculated as described below.

The present value factor shall be equal to the number resulting from the following mathematical calculations:

| Step A. | Add one (1) and the Treasury Rate (as defined below). |
| Step B. | Raise the sum determined in Step A to the power of an exponent equal to the opposite of (i.e., a negative number) the number of payment periods remaining between the prepayment date and the Yield Maintenance Date (as defined below). |
| Step C. | Subtract the number resulting from Step B from one (1). |
| Step D. | Divide the result of Step C by the Treasury Rate to reach the final result. |

The present value factor shall be calculated using the following formula:

*Where "r" is the Treasury Rate and "n" is the number of payment periods remaining between the prepayment date and the Yield Maintenance Date.

The term "Treasury Rate" means a rate per annum, expressed as a decimal calculated to five digits, equal to the yield (adjusted to the payment frequency of the Note) on the Interpolated Treasury Constant Maturity maturing on the Yield Maintenance Date as published by the Board of Governors of the Federal Reserve System, or as reported by the Department of the Treasury as of the fifth business day preceding the date the Borrower notifies the Lender of the Borrower's intent to make a principal prepayment.

The term "Yield Maintenance Date" means the date six months prior to the final Maturity Date of this Note; except that, if any earlier date is specified in this Note as the date after which this Note may be prepaid without the payment of any Yield Maintenance Amount, such earlier date shall be the Yield Maintenance Date". Except for the foregoing, Borrower may pay all or a portion of the amount owed earlier than it is due. Early payments will not, unless agreed to by Lender in writing, relieve Borrower of Borrower's obligation to continue to make payments under the payment schedule. Rather, early payments will reduce the principal balance due and may result in Borrower's making fewer payments. Borrower agrees not to send Lender payments marked "paid in full", "without recourse", or similar language. If Borrower sends such a payment, Lender may accept it without losing any of Lender's rights under this Note, and Borrower will remain obligated to pay any further amount owed to Lender. All written communications concerning disputed amounts, including any check or other payment instrument that indicates that the payment constitutes "payment in full" of the amount owed or that is tendered with other conditions or limitations or as full satisfaction of a disputed amount must be mailed or delivered to: LEND LEASE AGRI-BUSINESS, INC., Servicing Department, 12747 Olive Street Road, Suite 350 St. Louis, MO 63141.

**INTEREST AFTER DEFAULT.** Upon default, including failure to pay upon final maturity, at Lender's option, and if permitted by applicable law, Lender may add any unpaid accrued interest to principal and such sum will bear interest therefrom until paid at the rate provided in this Note (including any increased rate). Upon default, Lender, at its option, may, if permitted under applicable law, increase the interest rate on this Note 5.000 percentage points. The interest rate will not exceed the maximum rate permitted by applicable law.

**DEFAULT.** Each of the following shall constitute an event of default ("Event of Default") under this Note:

**Payment Default.** Borrower fails to make any payment when due under this Note.

**Other Defaults.** Borrower fails to comply with or to perform any other term, obligation, covenant or condition contained in this Note or in any of the related documents or to comply with or to perform any term, obligation, covenant or condition contained in any other agreement between Lender and Borrower.

**False Statements.** Any warranty, representation or statement made or furnished to Lender by Borrower or on Borrower's behalf under this Note or the related documents is false or misleading in any material respect, either now or at the time made or furnished or becomes false or misleading at any time thereafter.

**Death or Insolvency.** The death of Borrower or the dissolution or termination of Borrower's existence as a going business, the insolvency of Borrower, the appointment of a receiver for any part of Borrower's property, any assignment for the benefit of creditors, any type of creditor workout, or the commencement of any proceeding under any bankruptcy or insolvency laws by or against Borrower.

**Creditor or Forfeiture Proceedings.** Commencement of foreclosure or forfeiture proceedings, whether by judicial proceeding, self-help, repossession or any other method, by any creditor of Borrower or by any governmental agency against any collateral securing the loan. This includes a garnishment of any of Borrower's accounts, including deposit accounts, with Lender. However, this Event of Default shall not apply if there is a good faith dispute by Borrower as to the validity or reasonableness of the claim which is the basis of the creditor or forfeiture proceeding and if Borrower gives Lender written notice of the creditor or forfeiture proceeding and deposits with Lender monies or a surety bond for the creditor or forfeiture proceeding, in an amount determined by Lender, in its sole discretion, as being an adequate reserve or bond for the dispute.

**Events Affecting Guarantor.** Any of the preceding events occurs with respect to any guarantor, endorser, surety, or accommodation party of any of the indebtedness or any guarantor, endorser, surety, or accommodation party dies or becomes incompetent, or revokes or disputes the validity of, or liability under, any guaranty of the indebtedness evidenced by this Note.

**Adverse Change.** A material adverse change occurs in Borrower's financial condition, or Lender believes the prospect of payment or performance of this Note is impaired.

Case 6:11-cv-00019-BAE -GRS   Document 1-2   Filed 02/25/11   Page 31 of 50
JUN. 25. 2003  2:08PM     LEND-LEASE AGRI-BUS        NO. 113   P. 7
Case 6:11-tc-05000   Document 5-2    Filed 02/25/11   Page 31 of 162

**PROMISSORY NOTE**
(Continued)

LENDER'S RIGHTS. Upon default, Lender may declare the entire unpaid principal balance on this Note and all accrued unpaid interest immediately due, and then Borrower will pay that amount.

ATTORNEYS' FEES; EXPENSES. Lender may hire or pay someone else to help collect this Note if Borrower does not pay. Borrower will pay Lender that amount. This includes, subject to any limits under applicable law, Lender's costs of collection, including court costs and fifteen percent (15%) of the principal plus accrued interest as attorneys' fees, if any sums owing under this Note are collected by or through an attorney at law, whether or not there is a lawsuit, and legal expenses for bankruptcy proceedings (including efforts to modify or vacate any automatic stay or injunction), and appeals. If not prohibited by applicable law, Borrower also will pay any court costs, in addition to all other sums provided by law.

GOVERNING LAW. This Note will be governed by, construed and enforced in accordance with federal law and the laws of the State of Georgia. This Note has been accepted by Lender in the State of Georgia.

CHOICE OF VENUE. If there is a lawsuit, Borrower agrees upon Lender's request to submit to the jurisdiction of the courts of Tattnall County, State of Georgia.

COLLATERAL. Borrower acknowledges this Note is secured by the following collateral described in the security instrument listed herein, all the terms and conditions of which are hereby incorporated and made a part of this Note: a Security Deed dated June 23, 2003, to Lender on real property located in Tattnall County, State of Georgia.

PREPAYMENTS AND CURTAILMENTS. Any prepayments of scheduled installments that are made on a date that is not an installment payment date must be accompanied by interest to the next installment payment date and such prepayment will not be credited to the Borrower's account until such installment payment date.

Any curtailments or prepayments, partial or in whole, other than scheduled installment payments must be accompanied by unpaid interest accrued on such principal amount from the date to which interest was last paid to the next installment payment date, together with any yield maintenance amount that may be applicable, and such payment shall not be considered as having been received and will not be credited to the Borrower's account until such installment payment date.

If the Borrower makes a partial curtailment or prepayment, there will be no delays in the due dates of Borrower's installment payments, unless the lender agrees in writing to such delays; and unless the Borrower and lender agree otherwise, the lender, in its sole discretion, may re-amortize the Mortgage Note on the basis of the new principal balance. Otherwise, the making of a prepayment will operate only to discharge the Mortgage Note at an earlier date.

FEDERAL LAW. Notwithstanding any provision of the note and Deed of Trust or Mortgage to the contrary, any choice of law provision includes applicable Federal Law and such provision is not intended to prevent the application of Federal law. In addition to any other statutory authority listed in the Note, the terms of this note and the interest rate and fees set forth herein are authorized by Title 12 of the United States Code, section 2279aa-12 as amended from time to time.

APPLICATION OF PAYMENTS. Notwithstanding any provision of this Note to the contrary, unless otherwise agreed or required by applicable law, payments will be applied first to accrued unpaid interest, then to principal, and all other amounts owed other than late charges; and any remaining amount to unpaid late charges.

ACCELERATION FEE. Unless prohibited by applicable law, an acceleration fee shall be due and payment upon acceleration of the indebtedness evidenced by this Note on account of a default, whether voluntary or involuntary, under this Note and Deed of Trust or Mortgage, or any other document securing this note, or any call option in any such Deed of Trust or Mortgage or other document, such fee to be calculated in the same manner as the Yield Maintenance Amount set forth in this note.

DISSEMINATION OF INFORMATION. If the Lender determines or contemplates at any time to sell, transfer or assign this Note, this Security Instrument and any other security Instruments, and any or all servicing rights with respect thereto, or to grant participations therein ("Participations") or issue, in a public offering or private placement, mortgage pass-through certificates or other securities evidencing a beneficial interest in the Loan ("Securities"), Lender may forward to each prospective purchaser, transferee, assignee, servicer, participant, investor, or their respective successors in such Participations and/or Securities (collectively, the "Investor"), any rating agency rating such Securities and each prospective investor, all documents and information which Lender now has or may hereafter acquire relating to the indebtedness and to the Borrower, any Guarantor, any Indemnitors and the Mortgaged Property, which shall have been furnished by Borrower, any Guarantor or any Indemnitors, as Lender determines necessary or desirable.

LATE CHARGE. Notwithstanding any provision of the note to contrary, in the event any scheduled payment of principal or interest shall not be received by the tenth day of the month for fifth day of the month for monthly installments) in which it is due and payable, interest shall be payable on such defaulted payment at a rate which is equal to five percent (5%) per annum above the rate of interest which would have existed from time to time under this note but for such nonpayment, subject to a minimum interest charge of five percent (5.000%) of such defaulted payment.

DEFAULT RATE. Notwithstanding any provision of the note to the contrary, the whole of the principal sum and, to the extent permitted by law, any accrued interest and any other sums advanced to protect and/or enforce the note holder's interest in this note and the Mortgage (including reasonable costs of recovery and/attorney's fees and expenses) shall bear interest from and after maturity, whether or not resulting from acceleration, at a rate equal to five percent (5%) per annum above the rate of interest under this note had such maturity not occurred.

CALCULATION OF INTEREST. Notwithstanding any provision of the note to the contrary, interest will be calculated in any reasonable manner determined solely by the holder of this note based on an assumed 30 day month, and a 360-day year.

FINANCIAL STATEMENTS. Borrower agrees to provide current financial statements as requested by the holder of this note, but, during any time when this note is not subject to a default, Borrower shall not be required to provide such financial statements more than annually. If Borrower obtains financial statements which are audited or reviewed by an independent certified public accountant for the relevant period, such financial statements provided hereunder shall be such reviewed or audited statements.

ATTORNEYS' FEES; EXPENSES. If any part of the indebtedness is collected by or with any assistance from or consultation with an attorney at law, Grantor and/or Borrower shall pay to Lender as Lender's attorneys' fees, and interest thereon. Whether or not any court action is involved, and to the extent not prohibited by law, all attorneys' fees and all reasonable expenses Lender incurs that in Lender's opinion are necessary at any time for the protection of its interest or the enforcement of its rights shall become a part of the indebtedness payable on demand and shall bear interest at the Note rate from the date of expenditure until repaid. Expenses covered by this paragraph include, without limitation, however subject to any limits under applicable law, Lender's attorneys' fees and Lender's legal expenses whether or not there is a lawsuit, including attorneys' fees and expenses for bankruptcy proceedings (including efforts to modify or vacate any automatic stay or injunction), appeals, and any anticipated post-judgment collection services, the cost of searching records, obtaining title reports (including foreclosure reports), surveyors' reports, and appraisal fees and title insurance, to the extent permitted by applicable law. Grantor and/or Borrower also will pay any court costs, in addition to all other sums provided by law.

EXHIBIT "A" - VARIABLE RATE PROVISIONS:. Variable Rate Provisions is attached to this Note and by this reference is made a part of this Note just as if all the provisions, terms and conditions of the Exhibit had been fully set forth in this Note.

SUCCESSOR INTERESTS. The terms of this Note shall be binding upon Borrower, and upon Borrower's heirs, personal representatives, successors and assigns, and shall inure to the benefit of Lender and its successors and assigns.

NOTIFY US OF INACCURATE INFORMATION WE REPORT TO CONSUMER REPORTING AGENCIES: Please notify us if we report any inaccurate information about your account(s) to a consumer reporting agency. Your written notice describing the specific inaccuracy(ies) should be sent to us at the following address: LEND LEASE AGRI-BUSINESS, INC., 12747 Olive Street Road, Suite 350, St. Louis, MO 63141

GENERAL PROVISIONS. Lender may delay or forgo enforcing any of its rights or remedies under this Note without losing them. Borrower and any other person who signs, guarantees or endorses this Note, to the extent allowed by law, waive presentment, demand for payment, and notice of dishonor. Upon any change in the terms of this Note, and unless otherwise expressly stated in writing, no party who signs this Note, whether as maker, guarantor, accommodation maker or endorser, shall be released from liability. All such parties waive any right to require Lender to take action against any other party who signs this Note as provided in O.C.G.A. Section 10-7-24 and agree that Lender may renew or extend (repeatedly and for any length of time) this loan or release any party or guarantor or collateral; or impair, fail to realize upon or perfect Lender's security interest in the collateral; and take any other action deemed necessary by Lender without the consent of or notice to anyone. All such parties also agree that Lender may modify this loan without the consent of or notice to anyone other than the party with whom the modification is made. The obligations under this Note are joint and several.

## PROMISSORY NOTE
### (Continued)

Page 3

THIS NOTE IS GIVEN UNDER SEAL AND IT IS INTENDED THAT THIS NOTE IS AND SHALL CONSTITUTE AND HAVE THE EFFECT OF A SEALED INSTRUMENT ACCORDING TO LAW.

BORROWER:

X _____ (Seal)
　　Lois F. Lynn, Individually

LASER PRO Lending, Ver. 5.11.00.001 Copr. Harland Financial Solutions, Inc. 1997, 2005.  All Rights Reserved.  - GA  K:\CFI\LPL\D20.FC\TR-151  PR-151cm.com

JUN. 25. 2003  2:09PM  LEND-LEASE AGRI-BUSI  Case 6:11-cv-00019-BAE-GRS  Document 1-2  Filed 02/25/11  Page 33 of 50  NO. 113  P. 9

Case 6:11-tc-05000  Document 5-2  Filed 02/25/11  Page 33 of 162

### EXHIBIT "A"
### VARIABLE RATE PROVISIONS
(Variable Rate Mortgage – No Rate Cap)

A payment of interest only calculated at the Note Rate from the date of closing shall be due on the first day of July 1, 2003. Thereafter, installments of principal and interest in the amount of Eighteen Thousand Nine Hundred Fifty Four and 14/100 Dollars ($18,954.14) shall be due on January 1, 2004. Thereafter, to the extent that the Variable Interest Rate has changed, the amount of the installment payment shall change to that constant amount required to pay the unpaid principal balance of this Note in equal semi-annual installments, including accrued interest at the Variable Interest Rate calculated over the 25 year period beginning with July 1, 2003. Any remaining indebtedness, if not sooner paid, shall be due and payable on the Maturity Date, July 1, 2018. For purposes of determining the "principal balance" under the second sentence of this paragraph, calculations shall be based on the binding presumption of timely future payments, without any prepayments made after the date of the calculation, through the next scheduled Rate Change Date.

If Lender at any time determines, in its sole but reasonable discretion, that it has miscalculated the amount of any installment payment (whether because of a miscalculation of the Variable Interest Rate or otherwise), then Lender shall give notice to Borrower of the corrected amount of the installment payment (and the corrected Variable Interest Rate, if applicable) and (i) if the corrected amount of the installment payment represents an increase, then Borrower shall, within 30 calendar days thereafter, pay to Lender any sums that Borrower would have otherwise been obligated under this Note to pay to Lender had the amount of the installment payment not been miscalculated, or (ii) if the corrected amount of the installment payment represents a decrease thereof and Borrower is not otherwise in breach or default under any of the terms and provisions of this Note, the Security Instrument or any other loan document evidencing or securing this Note, then Borrower shall thereafter be paid the sums that Borrower would not have otherwise been obligated to pay to Lender had the amount of the installment payment not been miscalculated.

The Variable Rate shall be 5.20% per annum until July 1, 2008.

1. **INTEREST RATE AND PAYMENT ADJUSTMENT:** Effective on July 1, 2008, and on July 1, 2013 (each, a "Rate Change Date"), the Variable Interest Rate shall change to a rate that shall be determined 45 days prior to the Rate Change Date and be based upon the 5-year VRM servicing released net yield for 8-week delivery then being required by the Federal Agricultural Mortgage Corporation, adjusted for credit quality, plus 1.00 percent field servicing fee. At least thirty (30) days prior to a Rate Change Date, the Holder shall give written notice (the "Rate Change Notice") to the Maker setting forth the new Variable Interest Rate. The new Variable Interest Rate shall be effective for a five (5) year term.

The default rate of interest shall be adjusted to a rate equal to the new contract rate of interest plus five percent (5%) per annum. The amount of the scheduled payments due under this Note shall be adjusted to reflect the newly determined Variable Interest Rate and will be determined on each Rate Change Date.

The Holder reserves the right to not adjust the interest rate on this loan in the event of default.

2. **OPTIONAL PAYMENTS:** The Maker is hereby granted the right to prepay the loan evidenced hereby under the following terms and conditions:

VARIABLE RATE 12/19/02
PAGE 1 OF 3

JUN. 25. 2003 2:09PM CFMP-LEASE AGRI-BUST CASE 6:11-CV-00019-BAE-GRS Document 1-2 Filed 02/25/11 Page 34 of 50 NO. 913 P. 10

Case 6:11-tc-05000 Document 5-2 Filed 02/25/11 Page 34 of 162

A.    At any time during the six (6) months immediately preceding any Rate Change Date or the maturity date, the Maker may prepay the entire unpaid loan balance without the payment of a Yield Maintenance Amount (as defined below) by paying, in addition to the unpaid loan balance, interest accrued on the unpaid loan balance to the next payment date under this Note and all other sums due the Holder at the time of prepayment.

B.    At any other time after the date hereof, the Maker may partially prepay the principal balance, or prepay the principal balance in full, by paying a Yield Maintenance Amount (as defined below) in addition to the principal prepaid, interest accrued to the next payment date and any other sums then due.

"Yield Maintenance Amount" – An amount determined as of the date of any prepayment or any acceleration of the Note, equal to the greater of:

(a)    One percent (1%) of the amount of the principal payment; and

(b)    An amount calculated by multiplying:

(i)    the difference, expressed as a decimal calculated to five (5) digits and divided by the number of payment periods per year, between the interest rate payable on this Note (net of all servicing fee rates) and the Treasury Rate (as defined below); times

(ii)    the amount of the principal prepayment; times

(iii)    the present value factor, calculated as described below.
The present value factor shall be equal to the number resulting from the following mathematical calculations:

Step A.    Add one (1) and the Treasury Rate (as defined below).

Step B.    Raise the sum determined in Step A to the power of an exponent equal to the opposite of (i.e., a negative number) the number of payment periods remaining between the prepayment date and the applicable Yield Maintenance Date (as defined below).

Step C.    Subtract the number resulting from Step B from one (1).

Step D.    Divide the result of Step C by the Treasury Rate to reach the final result.

In order to assist in understanding the calculation of the fraction as stated in this paragraph, this fraction is also stated by the following mathematical formula:

$$\frac{(1-(1+r)^{-n})}{r}$$

Where "r" is the Treasury Rate and "n" is the number of payment periods remaining between the prepayment date and the applicable Yield Maintenance Date.

The term "Treasury Rate" means a rate per annum, expressed as a decimal calculated to five digits, equal to the yield (adjusted to the payment frequency on the Note) on the

VARIABLE RATE 12/19/02
PAGE 2 OF 3

JUN. 25. 2003  2:09PM   LENP LEASE_AGRT-BUST         NO. 443   P. 41

Case 6:11-cv-00019-BAE -GRS   Document 1-2   Filed 02/25/11   Page 35 of 50
Case 6:11-tc-05000   Document 5-2   Filed 02/25/11   Page 35 of 162

interpolated Treasury Constant Maturity maturing on the Yield Maintenance Date as published by the Board of Governors of the Federal Reserve System or as reported by the Department of the Treasury as of the fifth business day preceding the date the Maker notifies the Holder of the Maker's intent to make a principal prepayment.

The term "Yield Maintenance Date" means the date six months prior to each of (a) the next scheduled Rate Change Date and (b) the final maturity date of this Note; except that, if any earlier date is specified in this Note as the date after which this Note may be prepaid without the payment of any Yield Maintenance Amount, such earlier date shall be the last Yield Maintenance Date.

C. Acceleration Fees

Unless prohibited by applicable law, an acceleration fee shall be due and payable upon acceleration of the indebtedness evidenced by this Note on account of a default, whether voluntary or involuntary, under this Note or the Mortgage, or any other document securing this Note, or any call option in any such Mortgage or other document, such fee to be calculated in the same manner as the Yield Maintenance Amount set forth in this Note.

_____
Lois F. Lynn

05-15-03
L:\FARM_MAC\FORMS\VRM 5 YR
N:\LEGAL\FARM_MAC\FORMS\VRM 5 YR.DOC

VARIABLE RATE 12/19/02
PAGE 3 OF 3

EXHIBIT "B"

BOOK 0461 PAGE 739        # 2094

RECORDATION REQUESTED **GEORGIA INTANGIBLE TAX PAID**
LEND LEASE AGRI-BUSINESS, INC.  158100
12747 Olive Street Road
Suite 350                        July 2        2003
St. Louis, MO 63141       Dan L. Dittos by BT
                          Tax Collector / Commissioner

WHEN RECORDED MAIL TO:
LEND LEASE AGRI-BUSINESS, INC.  Tattnall  County
12747 Olive Street Road
Suite 350
St. Louis, MO 63141

SEND TAX NOTICES TO:        HORNE AND HORNE
Lois F. Lynn               ATTORNEYS AT LAW
Cynthia Lynn               130 NORTH CREST BLVD. STE. A
Redacted                   MACON, GEORGIA 31210
Collins, GA 30421

**Lend Lease**
AGRI-BUSINESS INC

## SECURITY DEED

THIS SECURITY DEED dated June 23, 2003, is made and executed between Lois F. Lynn and Cynthia Lynn (referred to below as "Grantor") and LEND LEASE AGRI-BUSINESS, INC., whose address is 12747 Olive Street Road, Suite 350, St. Louis, MO 63141 (referred to below as "Lender").

GRANT OF SECURITY DEED. FOR AND IN CONSIDERATION of the financial accommodations to Grantor by Lender resulting in the obligation which is hereinafter more particularly described, and in order to secure that obligation, Grantor hereby grants, bargains, conveys, transfers, assigns and sells to Lender all of Grantor's right, title, and interest in and to the following described real property: The Real Property is located in Tattnall County, State of Georgia and is described as follows:

See Exhibit "L", which is attached to this Security Deed and made a part of this Security Deed as if fully set forth herein.

TOGETHER WITH ANY AND ALL of the following: (i) all buildings, structures and improvements now or hereafter located on the real property or on any part or parcel thereof and all fixtures affixed or attached, actually or constructively, thereto; (ii) all and singular the tenements, hereditaments, easements and appurtenances belonging thereunto or in any wise appertaining thereto and the reversion and reversions, remainder or remainders thereof; (iii) all Rents accruing therefrom, whether now or hereafter due; (iv) all accounts and contract rights now or hereafter arising in connection with any part or parcel thereof or any buildings, structures or improvements now or hereafter located thereon, including without limitation all accounts and account rights in and to all leases or undertakings to lease now or hereafter affecting the land or any buildings, structures, or improvements thereon; (v) all minerals, flowers, crops, trees, timber, shrubbery and other emblements now or hereafter located thereon or thereunder or on or under any part or parcel thereof; (vi) all estates, rights, title and interest therein, or in any part or parcel thereof; (vii) all equipment, machinery, apparatus, fittings, fixtures, furniture, furnishings, mobile homes, modular homes and all personal property of every kind or description whatsoever now or hereafter located thereon, or in or on the buildings, structures and improvements thereon, and used in connection with the operation and maintenance thereof, and all additions thereto and replacements thereof; and (viii) all building materials, supplies, goods and equipment delivered thereto and placed thereon for the purpose of being affixed to or installed or incorporated or otherwise used in the buildings, structures or other improvements now or hereafter located thereon or any part or parcel thereof.

The Real Property tax identification number is 19-50, 19-52, 20-21 & 33-1

THIS SECURITY DEED, INCLUDING THE ASSIGNMENT OF RENTS AND THE SECURITY INTEREST IN THE RENTS AND PERSONAL PROPERTY, IS GIVEN TO SECURE (A) PAYMENT OF THE INDEBTEDNESS AND (B) PERFORMANCE OF ANY AND ALL OBLIGATIONS UNDER THE NOTE IN THE ORIGINAL PRINCIPAL AMOUNT OF $627,000.00 WHICH HAS THE MATURITY DATE OF JULY 1, 2018, THE RELATED DOCUMENTS, AND THIS SECURITY DEED. IT IS THE INTENTION OF GRANTOR AND LENDER TO CREATE A PERPETUAL OR INDEFINITE SECURITY INTEREST IN THE REAL PROPERTY DESCRIBED IN THIS SECURITY DEED PURSUANT TO O.C.G.A. 44-14-80(A)(2) AND TO AGREE THAT TITLE SHALL NOT REVERT TO GRANTOR FOR A PERIOD OF SEVEN (7) YEARS FROM THE MATURITY DATE OF THE DEBT OR DEBTS SECURED BY THIS SECURITY DEED. HOWEVER, NOTHING IN THIS PARAGRAPH WILL IMPAIR LENDER'S RIGHTS TO COLLECTION OF THE INDEBTEDNESS AND FORECLOSURE OF THE SECURITY INTEREST IF THE INDEBTEDNESS IS NOT REPAID WHEN DUE. THIS SECURITY DEED IS GIVEN AND ACCEPTED ON THE FOLLOWING TERMS:

GRANTOR'S WAIVERS. Grantor waives all rights or defenses arising by reason of any "one action" or "anti-deficiency" law, or any other law which may prevent Lender from bringing any action against Grantor, including a claim for deficiency to the extent Lender is otherwise entitled to a claim for deficiency, before or after Lender's commencement or completion of any foreclosure action, either judicially or by exercise of a power of sale.

GRANTOR'S REPRESENTATIONS AND WARRANTIES. Grantor warrants that: (a) this Security Deed is executed at Borrower's request and not at the request of Lender; (b) Grantor has the full power, right, and authority to enter into this Security Deed and to hypothecate the Property; (c) the provisions of this Security Deed do not conflict with, or result in a default under any agreement or other instrument binding upon Grantor and do not result in a violation of any law, regulation, court decree or order applicable to Grantor; (d) Grantor has established adequate means of obtaining from Borrower on a continuing basis information about Borrower's financial condition; and (e) Lender has made no representation to Grantor about Borrower (including without limitation the creditworthiness of Borrower).

PAYMENT AND PERFORMANCE. Except as otherwise provided in this Security Deed, Borrower shall pay to Lender all indebtedness secured by this Security Deed as it becomes due, and Borrower and Grantor shall strictly perform all Borrower's and Grantor's obligations under this Security Deed and the Related Documents.

POSSESSION AND MAINTENANCE OF THE PROPERTY. Borrower and Grantor agree that Borrower's and Grantor's possession and use of the Property shall be governed by the following provisions:

Possession and Use. Until the occurrence of an Event of Default, Grantor may (1) remain in possession and control of the Property; (2) use, operate or manage the Property; and (3) collect the Rents from the Property.

Duty to Maintain. Grantor shall maintain the Property in tenantable condition and promptly perform all repairs, replacements, and maintenance necessary to preserve its value.

Compliance With Environmental Laws. Grantor represents and warrants to Lender that: (1) During the period of Grantor's ownership of the Property, there has been no use, generation, manufacture, storage, treatment, disposal, release or threatened release of any Hazardous Substance by any person on, under, about or from the Property; (2) Grantor has no knowledge of, or reason to believe that there has been, except as previously disclosed to and acknowledged by Lender in writing, (a) any breach or violation of any Environmental Laws, (b) any use, generation, manufacture, storage, treatment, disposal, release or threatened release of any Hazardous Substance on, under, about or from the Property by any prior owners or occupants of the Property, or (c) any actual or threatened litigation or claims of any kind by any person relating to such matters; and (3) Except as previously disclosed to and acknowledged by Lender in writing, (a) neither Grantor nor any tenant, contractor, agent or other authorized user of the Property shall use, generate, manufacture, store, treat, dispose of or release any Hazardous Substance on, under, about or from the Property; and (b) any such activity shall be conducted in compliance with all applicable federal, state, and local laws, regulations and

BOOK 0461 PAGE 740

## SECURITY DEED
### (Continued)

Page 2

ordinances, including without limitation all Environmental Laws. Grantor authorizes Lender and its agents to enter upon the Property to make such inspections and tests, at Grantor's expense, as Lender may deem appropriate to determine compliance of the Property with this section of the Security Deed. Any inspections or tests made by Lender shall be for Lender's purposes only and shall not be construed to create any responsibility or liability on the part of Lender to Grantor or to any other person. The representations and warranties contained herein are based on Grantor's due diligence in investigating the Property for Hazardous Substances. Grantor hereby (1) releases and waives any future claims against Lender for indemnity or contribution in the event Grantor becomes liable for cleanup or other costs under any such laws; and (2) agrees to indemnify and hold harmless Lender against any and all claims, losses, liabilities, damages, penalties, and expenses which Lender may directly or indirectly sustain or suffer resulting from a breach of this section of the Security Deed or as a consequence of any use, generation, manufacture, storage, disposal, release or threatened release occurring prior to Grantor's ownership or interest in the Property, whether or not the same was or should have been known to Grantor. The provisions of this section of the Security Deed, including the obligation to indemnify, shall survive the payment of the Indebtedness and the satisfaction and reconveyance of the lien of this Security Deed and shall not be affected by Lender's acquisition of any interest in the Property, whether by foreclosure or otherwise.

Without otherwise limiting Grantor's covenants as provided herein, Grantor shall not without Lender's prior written consent, remove or permit the removal of sand, gravel or topsoil, or engage in borrow pit operations, or use or permit the use of the Property as a land fill or dump, or store, burn or bury or permit the storage, burning or burying of any material or product which may result in contamination of the Property or the groundwater or which may require the issuance of a permit by the Environmental Protection Agency or any state or local government agency governing the issuance of hazardous or toxic waste permits, or request or permit a change in zoning or land use classification, or cut or remove or suffer the cutting or removal of any trees or timber from the Property.

At its sole cost and expense, Grantor shall comply with and shall cause all occupants of the Property to comply with all Environmental Laws with respect to the disposal of industrial refuse or waste, and/or the discharge, processing, manufacture, generation, treatment, removal, transportation, storage and handling of Hazardous Substances, and pay immediately when due the cost of removal of any such wastes or substances from, and keep the Property free of any lien imposed pursuant to such laws, rules, regulations and orders.

Grantor shall not install or permit to be installed in or on the Property, friable asbestos or any substance containing asbestos and deemed hazardous by federal, state or local laws, rules, regulations or orders respecting such material. Grantor shall further not install or permit the installation of any machinery, equipment or fixtures containing polychlorinated biphenyls (PCBs) on or in the Property. With respect to any such material or materials currently present in or on the Property, Grantor shall promptly comply with all applicable Environmental Laws regarding the safe removal thereof, at Grantor's expense.

Grantor shall indemnify Lender and hold Lender harmless from and against all loss, cost, damage and expense (including, without limitation, attorneys' fees and costs incurred in the investigation, defense and settlement of claims) that Lender may incur as a result of or in connection with the assertion against Lender of any claim relating to the presence or removal of any Hazardous Substance, or compliance with any Environmental Law. No notice from any governmental body has ever been served upon Grantor or, to Grantor's knowledge after due inquiry, upon any prior owner of the Property, claiming a violation of or under any Environmental Law or concerning the environmental state, condition or quality of the Property, or the use thereof, or requiring or calling attention to the need for any work, repairs, construction, removal, cleanup, alterations, demolition, renovation or installation on, or in connection with, the Property in order to comply with any Environmental Law; and upon receipt of any such notice, Grantor shall take any and all steps, and shall perform any and all actions necessary or appropriate to comply with the same, at Grantor's expense. In the event Grantor fails to do so, Lender may declare this Security Deed to be in default.

Nuisance, Waste. Grantor shall not cause, conduct or permit any nuisance nor commit, permit, or suffer any stripping of or waste on or to the Property or any portion of the Property. Without limiting the generality of the foregoing, Grantor will not remove, or grant to any other party the right to remove, any timber, minerals (including oil and gas), coal, clay, scoria, soil, gravel or rock products without Lender's prior written consent.

Removal of Improvements. Grantor shall not demolish or remove any improvements from the Real Property without Lender's prior written consent. As a condition to the removal of any improvements, Lender may require Grantor to make arrangements satisfactory to Lender to replace such improvements with improvements of at least equal value.

Lender's Right to Enter. Lender and Lender's agents and representatives may enter upon the Real Property at all reasonable times to attend to Lender's interests and to inspect the Real Property for purposes of Grantor's compliance with the terms and conditions of this Security Deed.

Compliance with Governmental Requirements. Grantor shall promptly comply with all laws, ordinances, and regulations, now or hereafter in effect, of all governmental authorities applicable to the use or occupancy of the Property, including without limitation, the Americans With Disabilities Act. Grantor may contest in good faith any such law, ordinance, or regulation and withhold compliance during any proceeding, including appropriate appeals, so long as Grantor has notified Lender in writing prior to doing so and so long as, in Lender's sole opinion, Lender's interests in the Property are not jeopardized. Lender may require Grantor to post adequate security or a surety bond, reasonably satisfactory to Lender, to protect Lender's interest.

Duty to Protect. Grantor agrees neither to abandon or leave unattended the Property. Grantor shall do all other acts, in addition to those acts set forth above in this section, which from the character and use of the Property are reasonably necessary to protect and preserve the Property.

DUE ON SALE - CONSENT BY LENDER. Lender may, at Lender's option, declare immediately due and payable all sums secured by this Security Deed upon the sale or transfer, without Lender's prior written consent, of all or any part of the Property, or any interest in the Property. A "sale or transfer" means the conveyance of Property or any right, title or interest in the Property; whether legal, beneficial or equitable; whether voluntary or involuntary; whether by outright sale, deed, installment sale contract, land contract, contract for deed, leasehold interest with a term greater than three (3) years, lease-option contract, or by sale, assignment, or transfer of any beneficial interest in or to any land trust holding title to the Property, or by any other method of conveyance of an interest in the Property. However, this option shall not be exercised by Lender if such exercise is prohibited by federal law or by Georgia law.

TAXES AND LIENS. The following provisions relating to the taxes and liens on the Property are part of this Security Deed:

Payment. Grantor shall pay when due (and in all events prior to delinquency) all taxes, payroll taxes, special taxes, assessments, water charges and sewer service charges levied against or on account of the Property, and shall pay when due all claims for work done on or for services rendered or material furnished to the Property. Grantor shall maintain the Property free of any liens having priority over or equal to the interest of Lender under this Security Deed, except for those liens specifically agreed to in writing by Lender, and except for the lien of taxes and assessments not due as further specified in the Right to Contest paragraph.

Right to Contest. Grantor may withhold payment of any tax, assessment, or claim in connection with a good faith dispute over the obligation to pay, so long as Lender's interest in the Property is not jeopardized. If a lien arises or is filed as a result of nonpayment, Grantor shall within fifteen (15) days after the lien arises or, if a lien is filed, within fifteen (15) days after Grantor has notice of the filing, secure the discharge of the lien, or if requested by Lender, deposit with Lender cash or a sufficient corporate surety bond or other security satisfactory to Lender in an amount sufficient to discharge the lien plus any costs and attorneys' fees, or other charges that could accrue as a result of a foreclosure or sale under the lien. In any contest, Grantor shall defend itself and Lender and shall satisfy any adverse judgment before enforcement against the Property. Grantor shall name Lender as an additional obligee under any surety bond furnished in the contest proceedings.

Evidence of Payment. Grantor shall upon demand furnish to Lender satisfactory evidence of payment of the taxes or assessments and shall authorize the appropriate governmental official to deliver to Lender at any time a written statement of the taxes and assessments against the Property.

Notice of Construction. Grantor shall notify Lender at least fifteen (15) days before any work is commenced, any services are furnished, or any materials are supplied to the Property, if any mechanic's lien, materialman's lien, or other lien could be asserted on

BOOK 0 4 6 1 PAGE 7 4 1

**SECURITY DEED**
**(Continued)**

account of the work, services, or materials. Grantor will upon request of Lender furnish to Lender advance assurances satisfactory to Lender that Grantor can and will pay the cost of such improvements.

**PROPERTY DAMAGE INSURANCE.** The following provisions relating to insuring the Property are a part of this Security Deed:

Maintenance of Insurance. Grantor shall procure and maintain policies of fire insurance with standard extended coverage endorsements on a replacement basis for the full insurable value covering all improvements on the Real Property in an amount sufficient to avoid application of any coinsurance clause, and with a standard mortgagee clause in favor of Lender. Grantor shall also procure and maintain comprehensive general liability insurance in such coverage amounts as Lender may request with Lender being named as additional insureds in such liability insurance policies. Additionally, Grantor shall maintain such other insurance, including but not limited to hazard, business interruption and boiler insurance as Lender may require. Policies shall be written by such insurance companies and in such form as may be reasonably acceptable to Lender. Grantor shall deliver to Lender certificates of coverage from each insurer containing a stipulation that coverage will not be cancelled or diminished without a minimum of thirty (30) days' prior written notice to Lender and not containing any disclaimer of the insurer's liability for failure to give such notice. Each insurance policy also shall include an endorsement providing that coverage in favor of Lender will not be impaired in any way by any act, omission or default of Grantor or any other person. Should the Real Property be located in an area designated by the Director of the Federal Emergency Management Agency as a special flood hazard area, Grantor agrees to obtain and maintain Federal Flood Insurance, if available, within 45 days after notice is given by Lender that the Property is located in a special flood hazard area, for the full unpaid principal balance of the loan and any prior liens on the property securing the loan, up to the maximum policy limits set under the National Flood Insurance Program, or as otherwise required by Lender, and to maintain such insurance for the term of the loan.

Application of Proceeds. Grantor shall promptly notify Lender of any loss or damage to the Property. Lender may make proof of loss if Grantor fails to do so within fifteen (15) days of the casualty. Whether or not Lender's security is impaired, Lender may, at Lender's election, receive and retain the proceeds of any insurance and apply the proceeds to the reduction of the Indebtedness, payment of any lien affecting the Property, or the restoration and repair of the Property. If Lender elects to apply the proceeds to restoration and repair, Grantor shall repair or replace the damaged or destroyed improvements in a manner satisfactory to Lender. Lender shall, upon satisfactory proof of such expenditure, pay or reimburse Grantor from the proceeds for the reasonable cost of repair or restoration if Grantor is not in default under this Security Deed. Any proceeds which have not been disbursed within 180 days after their receipt and which Lender has not committed to the repair or restoration of the Property shall be used first to pay any amount owing to Lender under this Security Deed, then to pay accrued interest, and the remainder, if any, shall be applied to the principal balance of the Indebtedness. If Lender holds any proceeds after payment in full of the Indebtedness, such proceeds shall be paid to Grantor as Grantor's interests may appear.

**LENDER'S EXPENDITURES.** If any action or proceeding is commenced that would materially affect Lender's interest in the Property or if Grantor fails to comply with any provision of this Security Deed or any Related Documents, including but not limited to Grantor's failure to discharge or pay when due any amounts Grantor is required to discharge or pay under this Security Deed or any Related Documents, Lender on Grantor's behalf may (but shall not be obligated to) take any action that Lender deems appropriate, including but not limited to discharging or paying all taxes, liens, security interests, encumbrances and other claims, at any time levied or placed on the Property and paying all costs for insuring, maintaining and preserving the Property. All such expenditures incurred or paid by Lender for such purposes will then bear interest at the rate charged under the Note from the date incurred or paid by Lender to the date of repayment by Grantor. All such expenses will become a part of the Indebtedness and, at Lender's option, will (A) be payable on demand; (B) be added to the balance of the Note and be apportioned among and be payable with any installment payments to become due during either (1) the term of any applicable insurance policy; or (2) the remaining term of the Note; or (C) be treated as a balloon payment which will be due and payable at the Note's maturity. The Security Deed also will secure payment of these amounts. Such right shall be in addition to all other rights and remedies to which Lender may be entitled upon Default.

**WARRANTY; DEFENSE OF TITLE.** The following provisions relating to ownership of the Property are a part of this Security Deed:

Title. Grantor warrants that: (a) Grantor holds good and marketable title of record to the Property in fee simple, free and clear of all liens and encumbrances other than those set forth in the Real Property description or in any title insurance policy, title report, or final title opinion issued in favor of, and accepted by, Lender in connection with this Security Deed, and (b) Grantor has the full right, power, and authority to execute and deliver this Security Deed to Lender.

Defense of Title. Subject to the exception in the paragraph above, Grantor warrants and will forever defend the title to the Property against the lawful claims of all persons. In the event any action or proceeding is commenced that questions Grantor's title or the interest of Lender under this Security Deed, Grantor shall defend the action at Grantor's expense. Grantor may be the nominal party in such proceeding, but Lender shall be entitled to participate in the proceeding and to be represented in the proceeding by counsel of Lender's own choice, and Grantor will deliver, or cause to be delivered, to Lender such instruments as Lender may request from time to time to permit such participation.

Compliance With Laws. Grantor warrants that the Property and Grantor's use of the Property complies with all existing applicable laws, ordinances, and regulations of governmental authorities.

Survival of Representations and Warranties. All representations, warranties, and agreements made by Grantor in this Security Deed shall survive the execution and delivery of this Security Deed, shall be continuing in nature, and shall remain in full force and effect until such time as Borrower's Indebtedness shall be paid in full.

**CONDEMNATION.** The following provisions relating to condemnation proceedings are a part of this Security Deed:

Notice of Proceedings. Grantor shall immediately notify Lender in writing should all or any part of the Property become subject to any condemnation or expropriation proceedings or other similar proceedings, including without limitation, any condemnation, confiscation, eminent domain, inverse condemnation or temporary requisition or taking of the mortgaged Property, or any part or parts of the Property. Grantor further agrees to promptly take such steps as may be necessary and proper within Lender's sole judgment and at Grantor's expense, to defend any such condemnation or expropriation proceedings and obtain the proceeds derived from such proceedings. Grantor shall not agree to any settlement or compromise or any condemnation or expropriation claim without Lender's prior written consent.

Lender's Participation. Lender may, at Lender's sole option, elect to participate in any such condemnation or expropriation proceedings and be represented by counsel of Lender's choice. Grantor agrees to provide Lender with such documentation as Lender may request to permit Lender to so participate and to reimburse Lender for Lender's costs associated with Lender's participation, including Lender's reasonable attorneys' fees.

Conduct of Proceedings. If Grantor fails to defend any such condemnation or expropriation proceedings to Lender's satisfaction, Lender may undertake the defense of such a proceeding for and on behalf of Grantor. To this end, Grantor irrevocably appoints Lender as Grantor's agent and attorney-in-fact, such agency being coupled with an interest, to bring, defend, adjudicate, settle, or otherwise compromise such condemnation or expropriation claims; it being understood, however, that, unless one or more Events of Default (other than the condemnation or expropriation of the Property) then exists under this Security Deed, Lender will not agree to any final settlement or compromise of any such condemnation or expropriation claim without Grantor's prior approval, which approval shall not be unreasonably withheld.

Application of Net Proceeds. Lender shall have the right to receive all proceeds derived or to be derived from the condemnation, expropriation, confiscation, eminent domain, inverse condemnation, or any permanent or temporary requisition or taking of the Property, or any part or parts of the Property ("condemnation proceeds"). In the event that Grantor should receive any such condemnation proceeds, Grantor agrees to immediately turn over and to pay such proceeds to Lender. All condemnation proceeds, which are received by, or which are payable to either Grantor or Lender, shall be applied, at Lender's sole option and discretion, and in such manner as Lender may determine (after payment of all reasonable costs, expenses and attorneys' fees necessarily paid or incurred by Grantor and/or Lender), for the purpose of: (a) replacing or restoring the condemned, expropriated, confiscated, or taken

**SECURITY DEED**
(Continued)

Page 4

Property; or  (b) reducing the then outstanding balance of the indebtedness, together with interest thereon, with such payments being applied in the manner provided in this Security Deed.  Lender's receipt of such condemnation proceeds and the application of such proceeds as provided in this Security Deed shall not affect the lien of this Security Deed.

**IMPOSITION OF TAXES, FEES AND CHARGES BY GOVERNMENTAL AUTHORITIES.**  The following provisions relating to governmental taxes, fees and charges are a part of this Security Deed:

Current Taxes, Fees and Charges.  Upon request by Lender, Grantor shall execute such documents in addition to this Security Deed and take whatever other action is requested by Lender to perfect and continue Lender's security interest on the Property.  Grantor shall reimburse Lender for all taxes, as described below, together with all expenses incurred in recording, perfecting or continuing this Security Deed, including without limitation all taxes, fees, documentary stamps, and other charges for recording or registering this Security Deed.

Taxes.  The following shall constitute taxes to which this section applies:  (1)  a specific tax upon this type of Security Deed or upon all or any part of the Indebtedness secured by this Security Deed;  (2)  a specific tax on Borrower which Borrower is authorized or required to deduct from payments on the Indebtedness secured by this type of Security Deed;  (3)  a tax on this type of Security Deed chargeable against the Lender or the holder of the Note; and  (4)  a specific tax on all or any portion of the Indebtedness or on payments of principal and interest made by Borrower.

Subsequent Taxes.  If any tax to which this section applies is enacted subsequent to the date of this Security Deed, this event shall have the same effect as an Event of Default, and Lender may exercise any or all of its available remedies for an Event of Default as provided below unless Grantor either  (1)  pays the tax before it becomes delinquent, or  (2)  contests the tax as provided above in the Taxes and Liens section and deposits with Lender cash or a sufficient corporate surety bond or other security satisfactory to Lender.

**SECURITY AGREEMENT; FINANCING STATEMENTS.**  The following provisions relating to this Security Deed as a security agreement are a part of this Security Deed:

Security Agreement.  This instrument shall constitute a Security Agreement to the extent any of the Property constitutes fixtures, and Lender shall have all of the rights of a secured party under the Uniform Commercial Code as amended from time to time.

Security Interest.  Upon request by Lender, Grantor shall execute financing statements and take whatever other action is requested by Lender to perfect and continue Lender's security interest in the Rents and Personal Property.  In addition to recording this Security Deed in the real property records, Lender may, at any time and without further authorization from Grantor, file executed counterparts, copies or reproductions of this Security Deed as a financing statement.  Grantor shall reimburse Lender for all expenses incurred in perfecting or continuing this security interest.  Upon default, Grantor shall not remove, sever or detach the Personal Property from the Property.  Upon default, Grantor shall assemble any Personal Property not affixed to the Property in a manner and at a place reasonably convenient to Grantor and Lender and make it available to Lender within three (3) days after receipt of written demand from Lender to the extent permitted by applicable law.

Addresses.  The mailing addresses of Grantor (debtor) and Lender (secured party) from which information concerning the security interest granted by this Security Deed may be obtained (each as required by the Uniform Commercial Code) are as stated on the first page of this Security Deed.

**FURTHER ASSURANCES; ATTORNEY-IN-FACT.**  The following provisions relating to further assurances and attorney-in-fact are a part of this Security Deed:

Further Assurances.  At any time, and from time to time, upon request of Lender, Grantor will make, execute and deliver, or will cause to be made, executed or delivered, to Lender or to Lender's designee, and when requested by Lender, cause to be filed, recorded, refiled, or rerecorded, as the case may be, at such times and in such offices and places as Lender may deem appropriate, any and all such mortgages, deeds of trust, security deeds, security agreements, financing statements, continuation statements, instruments of further assurance, certificates, and other documents as may, in the sole opinion of Lender, be necessary or desirable in order to effectuate, complete, perfect, continue, or preserve  (1)  Borrower's and Grantor's obligations under the Note, this Security Deed, and the Related Documents, and  (2)  the liens and security interests created by this Security Deed as first and prior liens on the Property, whether now owned or hereafter acquired by Grantor.  Unless prohibited by law or Lender agrees to the contrary in writing, Grantor shall reimburse Lender for all costs and expenses incurred in connection with the matters referred to in this paragraph.

Attorney-in-Fact.  If Grantor fails to do any of the things referred to in the preceding paragraph, Lender may do so for and in the name of Grantor and at Grantor's expense.  For such purposes, Grantor hereby irrevocably appoints Lender as Grantor's attorney-in-fact for the purpose of making, executing, delivering, filing, recording, and doing all other things as may be necessary or desirable, in Lender's sole discretion, to accomplish the matters referred to in the preceding paragraph.

**FULL PERFORMANCE.**  If Borrower pays all the Indebtedness when due, and otherwise performs all the obligations imposed upon Grantor under this Security Deed, Lender shall execute and deliver to Grantor a suitable satisfaction of this Security Deed and suitable statements of termination of any financing statement on file evidencing Lender's security interest in the Rents and the Personal Property.  Grantor will pay, if permitted by applicable law, any reasonable termination fee as determined by Lender from time to time.

**EVENTS OF DEFAULT.**  Each of the following, at Lender's option, shall constitute an Event of Default under this Security Deed:

Payment Default.  Borrower fails to make any payment when due under the Indebtedness.

Default on Other Payments.  Failure of Grantor within the time required by this Security Deed to make any payment for taxes or insurance, or any other payment necessary to prevent filing of or to effect discharge of any lien.

Other Defaults.  Borrower or Grantor fails to comply with or to perform any other term, obligation, covenant or condition contained in this Security Deed or in any of the Related Documents or to comply with or to perform any term, obligation, covenant or condition contained in any other agreement between Lender and Borrower or Grantor.

False Statements.  Any warranty, representation or statement made or furnished to Lender by Borrower or Grantor or on Borrower's or Grantor's behalf, or made by Guarantor, or any other guarantor, endorser, surety, or accommodation party, under this Security Deed or the Related Documents in connection with the obtaining of the Indebtedness evidenced by the Note or any security document directly or indirectly securing repayment of the Note is false or misleading in any material respect, either now or at the time made or furnished or becomes false or misleading at any time thereafter.

Defective Collateralization.  This Security Deed or any of the Related Documents ceases to be in full force and effect (including failure of any collateral document to create a valid and perfected security interest or lien) at any time and for any reason.

Death or Insolvency.  The death of Borrower or Grantor, the insolvency of Borrower or Grantor, the appointment of a receiver for any part of Borrower's or Grantor's property, any assignment for the benefit of creditors, any type of creditor workout, or the commencement of any proceeding under any bankruptcy or insolvency laws by or against Borrower or Grantor.

Creditor or Forfeiture Proceedings.  Commencement of foreclosure or forfeiture proceedings, whether by judicial proceeding, self-help, repossession or any other method, by any creditor of Borrower or Grantor or by any governmental agency against any property securing the Indebtedness.  This includes a garnishment of any of Borrower's or Grantor's accounts, including deposit accounts, with Lender.  However, this Event of Default shall not apply if there is a good faith dispute by Borrower or Grantor as to the validity or reasonableness of the claim which is the basis of the creditor or forfeiture proceeding and if Borrower or Grantor gives Lender written notice of the creditor or forfeiture proceeding and deposits with Lender monies or a surety bond for the creditor or forfeiture proceeding, in an amount determined by Lender, in its sole discretion, as being an adequate reserve or bond for the dispute.

Execution; Attachment.  Any execution or attachment is levied against the Property, and such execution or attachment is not set aside, discharged or stayed within thirty (30) days after the same is levied.

Change in Zoning or Public Restriction.  Any change in any zoning ordinance or regulation or any other public restriction is enacted,

BOOK 0461 PAGE 743

## SECURITY DEED
### (Continued)

Page 6

adopted or implemented, that limits or defines the uses which may be made of the Property such that the present or intended use of the Property, as specified in the Related Documents, would be in violation of such zoning ordinance or regulation or public restriction, as changed.

**Default Under Other Lien Documents.** A default occurs under any other mortgage, deed of trust or security agreement covering all or any portion of the Property.

**Judgment.** Unless adequately covered by insurance in the opinion of Lender, the entry of a final judgment for the payment of money involving more than ten thousand dollars ($10,000.00) against Borrower or Grantor and the failure by Borrower or Grantor to discharge the same, or cause it to be discharged, or bonded off to Lender's satisfaction, within thirty (30) days from the date of the order, decree or process under which or pursuant to which such judgment was entered.

**Breach of Other Agreement.** Any breach by Borrower or Grantor under the terms of any other agreement between Borrower or Grantor and Lender that is not remedied within any grace period provided therein, including without limitation any agreement concerning any indebtedness or other obligation of Borrower or Grantor to Lender, whether existing now or later.

**Events Affecting Guarantor.** Any of the preceding events occurs with respect to any Guarantor, or any other guarantor, endorser, surety, or accommodation party of any of the Indebtedness or any Guarantor, or any other guarantor, endorser, surety, or accommodation party dies or becomes incompetent, or revokes or disputes the validity of, or liability under, any Guaranty of the Indebtedness.

**Adverse Change.** A material adverse change occurs in Grantor's financial condition, or Lender believes the prospect of payment or performance of the Indebtedness is impaired.

**LENDER'S REMEDIES AND POWER OF SALE.** Upon the occurrence of an Event of Default, Lender shall have the following rights, powers, and remedies:

**Accelerate Indebtedness.** Lender, at Lender's option and election and without notice to Grantor, may declare all or any portion of the Indebtedness to be immediately due and payable, whereupon the same shall be and shall become due and payable forthwith without presentment demand, protest or notice of any kind, all of which are expressly waived by Grantor.

**Entry and Possession.** Lender may enter upon the Property, or any part thereof, and take possession of the Property, excluding therefrom Grantor and all agents, employees and representatives of Grantor; employ a manager of the Property or any part thereof; hold, store, use, operate, manage, control, maintain and lease the Property or any part thereof; conduct business thereon; make all necessary and appropriate repairs, renewals, and replacements; keep the Property insured; and carry out or enter into agreements of any kind with respect to the Property.

**Collection of Rents.** Lender may collect and receive all Rents from the Property and apply the same to the Indebtedness, after deducting therefrom all costs, charges, and expenses of taking, holding, managing, and operating the Property, including the fees and expenses of Lender's attorneys, and agents.

**Payments.** Lender may pay any sum or sums deemed necessary or appropriate by Lender to protect the Property or any part of the Property or Lender's interest in the Property.

**Other Remedies.** Lender may exercise all rights and remedies contained in any Related Document, heretofore, concurrently herewith or in the future executed by Grantor in favor of Lender in connection with the transactions resulting in the Indebtedness or any part thereof.

**Appointment of Receiver.** Lender may make application to any court and be entitled to the appointment of a receiver to take charge of the Property or any part thereof without alleging or proving, or having any consideration given to, the insolvency of Grantor, the value of the Property as security for the Indebtedness, or any other matter usually incident to the appointment of a receiver.

**UCC Remedies.** With respect to the Personal Property in which a security interest is herein granted, Lender may exercise any or all of the rights accruing to a secured party under this Security Deed, the Uniform Commercial Code (Sections 11-9-101 et. seq. of the Ga. Code Annotated) and any other applicable law. Grantor shall, if Lender requests, assemble all such Personal Property and make it available to Lender at a place or places to be designated by Lender, which shall be reasonably convenient to Grantor and Lender. Any notice required to be given by Lender of a public or private sale, lease or other disposition of the Personal Property or any other intended action by Lender may be delivered personally to Grantor or may be deposited in the United States mail with postage prepaid duly addressed to Grantor at the address of Grantor last known to Lender at least five (5) business days prior to such proposed action, and shall constitute reasonable and fair notice to Grantor of any such action.

**Power of Sale.** Lender may sell the Property, or any part thereof or any interest therein, separately, at Lender's discretion, with or without taking possession thereof, at public sale before the courthouse door of the county in which the Property, or any part thereof, is located, to the highest bidder for cash, after first giving notice of the time, place and terms of such sale by advertisement, published once a week for four weeks (without regard for the number of days) in a newspaper in which advertisements of sheriff's sales are published in such county. The advertisement so published shall be notice to Grantor, and Grantor hereby waives all other notices. Lender may bid and purchase at any such sale, and Lender may execute and deliver to the purchaser or purchasers at any such sale a sufficient conveyance of the Property, or the part thereof or interest therein sold. Lender's conveyance may contain recitals as to the occurrence of an Event of Default, under this Security Deed, which recitals shall be presumptive evidence that all preliminary acts prerequisite to such sale and conveyance were in all things duly complied with. The recitals made by Lender shall be binding and conclusive upon Grantor, and the sale and conveyance made by Lender shall divest Grantor of all right, title, interest and equity that Grantor may have had in, to and under the Property, or the part thereof or interest therein sold, and shall vest the same in the purchaser or purchasers at such sale. Lender may hold one or more sales hereunder until the Indebtedness has been satisfied in full. Grantor hereby constitutes and appoints Lender as Grantor's agent and attorney-in-fact to make such sale, to execute and deliver such conveyance and to make such recitals, and Grantor hereby ratifies and confirms all of the acts and doings of Lender as Grantor's agent and attorney-in-fact hereunder. Lender's agency and power as attorney-in-fact hereunder are coupled with an interest, cannot be revoked by insolvency, incompetency, death or otherwise, and shall not be exhausted until the Indebtedness has been satisfied in full. The proceeds of each sale by Lender hereunder shall be applied first to the costs and expenses of the sale and of all proceedings in connection therewith, including attorneys' fees if applicable, then to payment of the Indebtedness, and the remainder, if any, shall be paid to Grantor. If the proceeds of any sale are not sufficient to pay the Indebtedness in full, Lender shall determine, at Lender's option and in Lender's discretion, the portions of the Indebtedness to which the proceeds (after deducting therefrom the costs and expenses of the sale and all proceedings in connection therewith) shall be applied and in what order the proceeds shall be so applied. Grantor covenants and agrees that, in the event of any sale pursuant to the agency and power herein granted, Grantor shall be and become a tenant holding over and shall deliver possession of the Property, or the part thereof or interest therein sold, to the purchaser or purchasers at the sale or be summarily dispossessed in accordance with the provisions of law applicable to tenants holding over.

**Cumulative Remedies.** All rights and remedies set forth in this Security Deed are cumulative and in addition to any right or remedy provided for by statute, or now or hereafter existing at law or in equity, including without limitation the right of Lender to collect or enforce the Indebtedness with or without taking action with respect to the Property. Lender may, at Lender's election and at Lender's discretion, exercise each and every such right and remedy concurrently or separately. Except as may be prohibited by applicable law, all of Lender's rights and remedies, whether evidenced by this Security Deed or by any other writing, shall be cumulative and may be exercised singularly or concurrently.

**Initials Attorneys' Fees; Expenses.** If any part of the Indebtedness is collected by or with any assistance from an attorney at law, Grantor shall pay to Lender as Lender's attorneys' fees, fifteen percent (15%) of such amount collected. Whether or not any court action is involved, and to the extent not prohibited by law, all attorneys' fees and all reasonable expenses Lender incurs that in Lender's opinion are necessary at any time for the protection of its interest or the enforcement of its rights shall become a part of the Indebtedness payable on demand and shall bear interest at the Note rate from the date of the expenditure until repaid. Expenses covered by this paragraph include, without limitation, however subject to any limits under applicable law, Lender's

L.J.L.   (W)

BOOK 0461 PAGE 744

## SECURITY DEED
### (Continued)

Initials

attorneys' fees and Lender's legal expenses whether or not there is a lawsuit, including attorneys' fees and expenses for bankruptcy proceedings (including efforts to modify or vacate any automatic stay or injunction), appeals, and any anticipated post-judgment collection services, the cost of searching records, obtaining title reports (including foreclosure reports), surveyors' reports, and appraisal fees and title insurance, to the extent permitted by applicable law. Grantor also will pay any court costs, in addition to all other sums provided by law.

**NOTICES.** Any notice required to be given under this Security Deed, including without limitation any notice of default and any notice of sale shall be given in writing, and shall be effective when actually delivered, when actually received by telefacsimile (unless otherwise required by law), when deposited with a nationally recognized overnight courier, or, if mailed, when deposited in the United States mail, as first class, certified or registered mail postage prepaid, directed to the addresses shown near the beginning of this Security Deed. All copies of notices of foreclosure from the holder of any prior security interest which has priority over this Security Deed shall be sent to Lender's address, as shown near the beginning of this Security Deed. Any party may change its address for notices under this Security Deed by giving formal written notice to the other parties, specifying that the purpose of the notice is to change the party's address. For notice purposes, Grantor agrees to keep Lender informed at all times of Grantor's current address. Unless otherwise provided or required by law, if there is more than one Grantor, any notice given by Lender to any Grantor is deemed to be notice given to all Grantors.

**ATTORNEYS' FEES; EXPENSES.** If any part of the indebtedness is collected by or with any assistance from or consultation with an attorney at law, Grantor and/or Borrower shall pay to Lender as Lender's attorneys' fees, and interest thereon. Whether or not any court action is involved, and to the extent not prohibited by law, all attorneys' fees and all reasonable expenses Lender incurs that in Lender's opinion are necessary at any time for the protection of its interest or the enforcement of its rights shall become a part of the indebtedness payable on demand and shall bear interest at the Note rate from the date of expenditure until repaid. Expenses covered by this paragraph include, without limitation, however subject to any limits under applicable law, Lender's attorneys' fees and Lender's legal expenses whether or not there is a lawsuit, including attorneys' fees and expenses for bankruptcy proceedings (including efforts to modify or vacate any automatic stay or injunction), appeals, and any anticipated post-judgment collection services, the cost of searching records, obtaining title reports (including foreclosure reports), surveyors' reports, and appraisal fees and title insurance, to the extent permitted by applicable law. Grantor and/or Borrower also will pay any court costs, in addition to all other sums provided by law.

**MISCELLANEOUS PROVISIONS.** The following miscellaneous provisions are a part of this Security Deed:

**Amendments.** This Security Deed, together with any Related Documents, constitutes the entire understanding and agreement of the parties as to the matters set forth in this Security Deed. No alteration of or amendment to this Security Deed shall be effective unless given in writing and signed by the party or parties sought to be charged or bound by the alteration or amendment.

**Annual Reports.** If the Property is used for purposes other than Grantor's residence, Grantor shall furnish to Lender, upon request, a certified statement of net operating income received from the Property during Grantor's previous fiscal year in such form and detail as Lender shall require. "Net operating income" shall mean all cash receipts from the Property less all cash expenditures made in connection with the operation of the Property.

**Caption Headings.** Caption headings in this Security Deed are for convenience purposes only and are not to be used to interpret or define the provisions of this Security Deed.

**Governing Law.** This Security Deed will be governed by, construed and enforced in accordance with federal law and the laws of the State of Georgia. This Security Deed has been accepted by Lender in the State of Georgia.

**Choice of Venue.** If there is a lawsuit, Grantor agrees upon Lender's request to submit to the jurisdiction of the courts of Tattnall County, State of Georgia.

**Joint and Several Liability.** All obligations of Borrower and Grantor under the Security Deed shall be joint and several, and all references to Grantor shall mean each and every Grantor, and all references to Borrower shall mean each and every Borrower. This means that each Borrower and Grantor signing below is responsible for all obligations in this Security Deed.

**No Waiver by Lender.** Lender shall not be deemed to have waived any rights under this Security Deed unless such waiver is given in writing and signed by Lender. No delay or omission on the part of Lender in exercising any right shall operate as a waiver of such right or any other right. A waiver by Lender of a provision of this Security Deed shall not prejudice or constitute a waiver of Lender's right otherwise to demand strict compliance with that provision or any other provision of this Security Deed. No prior waiver by Lender, nor any course of dealing between Lender and Grantor, shall constitute a waiver of any of Lender's rights or of any of Grantor's obligations as to any future transactions. Whenever the consent of Lender is required under this Security Deed, the granting of such consent by Lender in any instance shall not constitute continuing consent to subsequent instances where such consent is required and in all cases such consent may be granted or withheld in the sole discretion of Lender.

**Severability.** If a court of competent jurisdiction finds any provision of this Security Deed to be illegal, invalid, or unenforceable as to any person or circumstance, that finding shall not make the offending provision illegal, invalid, or unenforceable as to any other person or circumstance. If feasible, the offending provision shall be considered modified so that it becomes legal, valid and enforceable. If the offending provision cannot be so modified, it shall be considered deleted from this Security Deed. Unless otherwise required by law, the illegality, invalidity, or unenforceability of any provision of this Security Deed shall not affect the legality, validity or enforceability of any other provision of this Security Deed.

**Non-Liability of Lender.** The relationship between Borrower and Grantor and Lender created by this Security Deed is strictly a debtor and creditor relationship and not fiduciary in nature, nor is the relationship to be construed as creating any partnership or joint venture between Lender and Borrower and Grantor. Borrower and Grantor are exercising Borrower's and Grantor's own judgement with respect to Borrower's and Grantor's business. All information supplied to Lender is for Lender's protection only and no other party is entitled to rely on such information. There is no duty for Lender to review, inspect, supervise or inform Borrower and Grantor of any matter with respect to Borrower's and Grantor's business. Lender and Borrower and Grantor intend that Lender may reasonably rely on all information supplied by Borrower and Grantor to Lender, together with all representations and warranties given by Borrower and Grantor to Lender, without investigation or confirmation by Lender and that any investigation or failure to investigate will not diminish Lender's right to so rely.

**Merger.** There shall be no merger of the interest or estate created by this Security Deed with any other interest or estate in the Property at any time held by or for the benefit of Lender in any capacity, without the written consent of Lender.

**Sole Discretion of Lender.** Whenever Lender's consent or approval is required under this Security Deed, the decision as to whether or not to consent or approve shall be in the sole and exclusive discretion of Lender and Lender's decision shall be final and conclusive.

**Successors and Assigns.** Subject to any limitations stated in this Security Deed on transfer of Grantor's interest, this Security Deed shall be binding upon and inure to the benefit of the parties, their successors and assigns. If ownership of the Property becomes vested in a person other than Grantor, Lender, without notice to Grantor, may deal with Grantor's successors with reference to this Security Deed and the Indebtedness by way of forbearance or extension without releasing Grantor from the obligations of this Security Deed or liability under the Indebtedness.

**Time is of the Essence.** Time is of the essence in the performance of this Security Deed.

**Waiver of Notice and Hearing and Homestead Exemption.** Grantor expressly waives: (1) any right Grantor may have under the Constitution of the State of Georgia or the Constitution of the United States of America to notice or to a judicial hearing prior to the exercise of any right or remedy provided to Lender by this Security Deed and Grantor waives Grantor's rights, if any, to set aside or invalidate any sale under power duly consummated in accordance with the provisions of this Security Deed on the ground (if such be the case) that the sale was consummated without prior notice or judicial hearing or both; and (2) all homestead exemption rights, if any, which Grantor or Grantor's family may have pursuant to the Constitution and laws of the United States, the State of Georgia or any other State of the United States, in and to the Property as against the collection of the indebtedness, or any part of the indebtedness. All waivers by Grantor in this provision have been made voluntarily, intelligently and knowingly by Grantor, after

BOOK 0461 PAGE 745

## SECURITY DEED
### (Continued)

Page 7

---

Grantor has been afforded an opportunity to be informed by counsel of Grantor's choice as to possible alternative rights. Grantor's execution of this Security Deed shall be conclusive evidence of the making of such waivers and that such waivers have been voluntarily, intelligently and knowingly made.

**DEFINITIONS.** The following capitalized words and terms shall have the following meanings when used in this Security Deed. Unless specifically stated to the contrary, all references to dollar amounts shall mean amounts in lawful money of the United States of America. Words and terms used in the singular shall include the plural, and the plural shall include the singular, as the context may require. Words and terms not otherwise defined in this Security Deed shall have the meanings attributed to such terms in the Uniform Commercial Code.

**Borrower.** The word "Borrower" means Lois F. Lynn, and all other persons and entities signing the Note in whatever capacity.

**Default.** The word "Default" means the Default set forth in the section titled "Default".

**Environmental Laws.** The words "Environmental Laws" mean any and all state, federal and local statutes, regulations and ordinances relating to the protection of human health or the environment, including without limitation the Comprehensive Environmental Response, Compensation, and Liability Act of 1980, as amended, 42 U.S.C. Section 9601, et seq. ("CERCLA"), the Superfund Amendments and Reauthorization Act of 1986, Pub. L. No. 99-499 ("SARA"), the Hazardous Materials Transportation Act, 49 U.S.C. Section 1801, et seq., the Resource Conservation and Recovery Act, 42 U.S.C. Section 6901, et seq., or other applicable state or federal laws, rules, or regulations adopted pursuant thereto.

**Event of Default.** The words "Event of Default" mean individually, collectively, and interchangeably any of the events of default set forth in this Security Deed in the events of default section of this Security Deed.

**Grantor.** The word "Grantor" means Lois F. Lynn and Cynthia Lynn.

**Guarantor.** The word "Guarantor" means any guarantor, surety, or accommodation party of any or all of the Indebtedness, and, in each case, Grantor's successors, assigns, heirs, personal representatives, executors and administrators of any guarantor, surety, or accommodation party.

**Guaranty.** The word "Guaranty" means the guaranty from Guarantor, or any other guarantor, endorser, surety, or accommodation party to Lender, including without limitation a guaranty of all or part of the Note.

**Hazardous Substances.** The words "Hazardous Substances" mean materials that, because of their quantity, concentration or physical, chemical or infectious characteristics, may cause or pose a present or potential hazard to human health or the environment when improperly used, treated, stored, disposed of, generated, manufactured, transported or otherwise handled. The words "Hazardous Substances" are used in their very broadest sense and include without limitation any and all hazardous or toxic substances, materials or waste as defined by or listed under the Environmental Laws. The term "Hazardous Substances" also includes, without limitation, petroleum and petroleum by-products or any fraction thereof and asbestos.

**Improvements.** The word "Improvements" means all existing and future improvements, buildings, structures, mobile homes affixed on the Real Property, facilities, additions, replacements and other construction on the Real Property.

**Indebtedness.** The word "Indebtedness" means all principal, interest, and other amounts, costs and expenses payable under the Note or Related Documents, together with all renewals of, extensions of, modifications of, consolidations of and substitutions for the Note or Related Documents and any amounts expended or advanced by Lender to discharge Grantor's obligations or expenses incurred by Lender to enforce Grantor's obligations under this Security Deed, together with any amounts expended to preserve and protect the Property and together with interest on such amounts as provided in this Security Deed.

**Lender.** The word "Lender" means LEND LEASE AGRI-BUSINESS, INC., its successors and assigns.

**Note.** The word "Note" means the promissory note dated June 23, 2003, in the original principal amount of $527,000.00 from Borrower to Lender, together with all renewals of, extensions of, modifications of, refinancings of, consolidations of, and substitutions for the promissory note or agreement. The maturity date of the Note is July 1, 2018.

**Personal Property.** The words "Personal Property" mean all equipment, fixtures, mobile homes, modular homes, and other articles of personal property now or hereafter owned by Grantor, and now or hereafter attached, affixed to or used in the operation of the Real Property excluding only that property which by operation of law is Real Property; together with all accessions, parts, and additions to, all replacements of, and all substitutions for, any of such property; and together with all proceeds (including without limitation all insurance proceeds and refunds of premiums) from any sale or other disposition of the Property.

**Property.** The word "Property" means collectively the Real Property and the Personal Property.

**Real Property.** The words "Real Property" mean the real property, interests and rights, as further described in this Security Deed less and except the Personal Property.

**Related Documents.** The words "Related Documents" mean all promissory notes, credit agreements, loan agreements, environmental agreements, guaranties, security agreements, mortgages, deeds of trust, security deeds, collateral mortgages, and all other instruments, agreements and documents, whether now or hereafter existing, executed in connection with the Indebtedness.

**Rents.** The word "Rents" means all present and future rents, revenues, income, issues, royalties, profits, and other benefits derived from the Property.

**Security Deed.** The words "Security Deed" mean this Security Deed between Grantor and Lender, and includes without limitation all assignments and security interest provisions relating to the Personal Property and the Rents.

IN WITNESS WHEREOF, THIS SECURITY DEED HAS BEEN SIGNED BY THE UNDERSIGNED, WHO ACKNOWLEDGES A COMPLETED COPY HEREOF. THIS SECURITY DEED IS GIVEN UNDER SEAL AND IT IS INTENDED THAT THIS SECURITY DEED IS AND SHALL CONSTITUTE AND HAVE THE EFFECT OF A SEALED INSTRUMENT ACCORDING TO LAW.

Signed, Sealed and Delivered in the presence of:

x _____
Unofficial Witness

Notary Public, _____

[NOTARY SEAL]

My Commission expires: _____

GRANTOR:

x _____ (Seal)
Lois F. Lynn, Individually

x _____ (Seal)
Cynthia Lynn, Individually

BOOK 0461 PAGE 746

EXHIBIT "L"
LEGAL DESCRIPTION
TRACT ONE (1)

ALL THAT TRACT OR PARCEL OF LAND LYING AND BEING IN THE 351ST AND 1601ST G.M.
DISTRICT OF TATTNALL COUNTY, GEORGIA CONTAINING 425.26 ACRES, MORE OR
LESS, AS SHOWN ON PLAT PREPARED BY C.E. WILLIAMS, DATED DECEMBER 24, 1975
AND RECORDED IN DEED BOOK 6-O, PAGE 69, CLERK'S OFFICE, TATTNALL SUPERIOR
COURT. SAID PLAT IS INCORPORATED HEREIN BY REFERENE AND MADE A PART
HEREOF.  SAID 425.26 ACRES CONSISTS OF SEVEN PARCELS OF LAND AS FOLLOWS:
PARCEL 1 CONTAINING 48.0 ACRES;  PARCEL 2 CONTAINING 75.5 ACRES; PARCEL 3
CONTAINING 24.3 ACRES; PARCEL 4 CONTAINING 47.4 ACRES; PARCEL 5 CONTAINING
74.38 ACRES; PARCEL 6 CONTAINING 84.37 ACRES AND PARCEL 7 CONTAINING 81.3
ACRES. ALL PARCELS LYING ADJACENT TO EACH OTHER.

TRACT TWO (2)

ALL THAT TRACT OR PARCEL OF LAND LYING AND BEING IN THE 351ST G.M. DISTRICT
OF TATTNALL COUNTY, GEORGIA CONTAINING 73 ACRES AS SHOWN ON PLAT MADE BY
C.G. ALEXANDER DATED NOVERMBER 2 AND NOVERMBER 7, 1987 AND RECORDED IN
DEED BOOK 4-L PAGE 329, TATTNALL COUNTY, GEORGIA RECORDS.. SAID PLAT IS
INCORPORATED HEREIN BY REFERENCE AND MADE A PART HEREOF.

TRACT THREE (3)

ALL THAT TRACT OR PARCEL OF LAND LYING AND BEING IN THE 1601ST G.M. DISTRICT
OF TATTNALL COUNTY, GEORGIA, CONTAINING 32.31 ACRES, MORE OR LESS, AS
SHOWN ON PLAT MADE BY EASON LAND SURVEYING DATED DECEMBER 22, 2000 AND
RECORDED IN PLAT BOOK 10, PAGE 142, CLERK'S OFFICE, TATTNALL SUPERIOR
COURT. SAID PLAT IS INCORPORATED HEREIN BY REFERENCE AND MADE A PART
HEREOF.

TRACT FOUR (4)

ALL THAT TRACT OR PARCEL OF LAND LYING AND BEING IN THE 1601ST G.M. DISTRICT
OF TATTNALL COUNTY, GEORGIA, CONTAINING 1 ACRE, MORE OR LESS, AS SHOWN ON
PLAT PREPARED BY EASON LAND SURVEYING DATED DECEMBER 1, 2000 AND
RECORDED IN PLAT BOOK 19, PAGE 141, CLERK'S OFFICE, TATTNALL SUPERIOR
COURT. SAID PLAT IS INCORPORATED HEREIN BY REFERENCE AND MADE A PART
HEREOF.

TRACT FIVE (5)

ALL THAT TRACT OR PARCEL OF LAND LYING AND BEING IN THE 1601ST G.M. DISTRICT
OF TATTNALL COUNTY, GEORGIA, CONTAINING 91 ACRES, MORE OR LESS, AS SHOWN
ON PLAT PREPARED BY JAMES L. TOOTLE, SURVEYOR, DATED OCTOBER 28, 1964 AND
RECORDED IN DEED BOOK 3-Y, PAGE 005, CLERK'S OFFICE, TATTNALL SUPERIOR
COURT. SAID PLAT IS INCORPORATED HEREIN BY REFERENCE AND MADE A PART
HEREOF.

TRACT SIX (6)

ALL THAT TRACT OR PARCEL OF LAND LYING AND BEING IN THE 1601ST G.M. DISTRICT
OF TATTNALL COUNTY, GEORGIA CONTAINING 57.61 ACRES, MORE OR LESS, AS
SHOWN ON PLAT PREPARED BY TIMOTHY W. EASON, DATED MAY 8, 1995 AND
RECORDED IN PLAT BOOK 14, PAGE 182-A, CLERK'S OFFICE, TATTNALL SUPERIOR
COURT.  SAID PLAT IS INCORPORATED HEREIN BY REFERENCE AND MADE A PART
HEREOF.

Initials

HORNE AND HORNE
ATTORNEYS AT LAW
130 NORTH CREST BLVD, STE. A
MACON, GEORGIA 31210

BOOK 0461 PAGE 747

# 8095

FILED-TATTNALL CO.
CLERK'S OFFICE

03 JUL -2 AM 11: 02

Debbie Crews
CLERK OF COURTS

## Assignment of Security Deed

*KNOW ALL MEN BY THESE PRESENTS*: That Lend Lease Agri-Business, Inc. for value received does hereby grant, bargain, sell, assign, transfer and set over unto

U.S. Bank Trust National Association, as Custodian/Trustee

c/o Lend Lease Agri-Business, Inc.

12747 Olive Street Road, Suite 350

St. Louis, Missouri 63141

that certain Security Deed bearing date the 23rd day of June 2003, made and executed by Lois F. Lynn and Cynthia Lynn, as mortgagor to Lend Lease Agri-Business, Inc. to secure the sum of $527,000.00 and interest, and recorded in the office of the County Auditor of Tattnall County, State of Georgia on the ___2___ day of ___July 2003___ in Volume ___461___ of Security Deeds, at page ___739 - 746___, being Auditor's File No._____, together with the note thereby secured and the money due and to grow due thereon, with the interest.

Dated: __6/23/03__

Executed Under Seal.

Signed, sealed and delivered
in the presence of:

Lend Lease Agri-Business, Inc.   (Seal)

By: *Richard E. Henderson f*
Richard E. Henderson, Jr.,
Chief Operating Officer

_____
Witness

STATE OF <u>MISSOURI</u>          )
                              ) SS:
COUNTY OF <u>ST. LOUIS</u>       )

**BE IT REMEMBERED**, that on this _____day of July, 2003, before me, a Notary Public in and for the County and State aforesaid, personally appeared RICHARD E. HENDERSON, JR., Chief Operating Officer, of Lend Lease Agri-Business, Inc., a Delaware corporation who is personally known to me to be the said officer of said corporation, and the same person who executed the foregoing instrument, and he duly acknowledged the execution of the same for and on behalf of and as the act and deed of said corporation.

**IN WITNESS WHEREOF**, I have hereunto subscribed my name affixed my official seal, on the day and year last above written.

_____, Notary Public

My commission expires

JUDY A. COCHRAN
Notary Public - State of Missouri
County of St. Charles
My Commission Expires May 4, 2007

BOOK 0461 PAGE 748

EXHIBIT "L"
LEGAL DESCRIPTION

### TRACT ON E (1)

ALL THAT TRACT OR PARCEL OF LAND LYING AND BEING IN THE 351ST AND 1601ST C.M. DISTRICT OF TATTNALL COUNTY, GEORGIA CONTAINING 426.25 ACRES, MORE OR LESS, AS SHOWN ON PLAT PREPARED BY C.E. WILLIAMS, DATED DECEMBER 24, 1976 AND RECORDED IN DEED BOOK 5-O, PAGE 69, CLERK'S OFFICE, TATTNALL SUPERIOR COURT. SAID PLAT IS INCORPORATED HEREIN BY REFERENE AND MADE A PART HEREOF. SAID 426.25 ACRES CONSISTS OF SEVEN PARCELS OF LAND AS FOLLOWS: PARCEL 1 CONTAINING 48.0 ACRES; PARCEL 2 CONTAINING 75.5 ACRES; PARCEL 3 CONTAINING 24.3 ACRES; PARCEL 4 CONTAINING 47.4 ACRES; PARCEL 5 CONTAINING 74.38 ACRES; PARCEL 6 CONTAINING 84.37 ACRES AND PARCEL 7 CONTAINING 91.3 ACRES. ALL PARCELS LYING ADJACENT TO EACH OTHER.

### TRACT TWO (2)

ALL THAT TRACT OR PARCEL OF LAND LYING AND BEING IN THE 351ST G.M. DISTRICT OF TATTNALL COUNTY, GEORGIA CONTAINING 73 ACRES AS SHOWN ON PLAT MADE BY C.G. ALEXANDER DATED NOVERMBER 2 AND NOVERMBER 7, 1987 AND RECORDED IN DEED BOOK 4-L PAGE 329, TATTNALL COUNTY, GEORGIA RECORDS.  SAID PLAT IS INCORPORATED HEREIN BY REFERENCE AND MADE A PART HEREOF.

### TRACT THREE (3)

ALL THAT TRACT OR PARCEL OF LAND LYING AND BEING IN THE 1601ST G.M. DISTRICT OF TATTNALL COUNTY, GEORGIA, CONTAINING 32.31 ACRES, MORE OR LESS, AS SHOWN ON PLAT MADE BY EASON LAND SURVEYING DATED DECEMBER 22, 2000 AND RECORDED IN PLAT BOOK 19, PAGE 142, CLERK'S OFFICE, TATTNALL SUPERIOR COURT. SAID PLAT IS INCORPORATED HEREIN BY REFERENCE AND MADE A PART HEREOF.

### TRACT FOUR (4)

ALL THAT TRACT OR PARCEL OF LAND LYING AND BEING IN THE 1601ST G.M. DISTRICT OF TATTNALL COUNTY, GEORGIA, CONTAINING 1 ACRE, MORE OR LESS, AS SHOWN ON PLAT PREPARED BY EASON LAND SURVEYING DATED DECEMBER 1, 2000 AND RECORDED IN PLAT BOOK 19, PAGE 141, CLERK'S OFFICE, TATTNALL SUPERIOR COURT. SAID PLAT IS INCORPORATED HEREIN BY REFERENCE AND MADE A PART HEREOF.

### TRACT FIVE (5)

ALL THAT TRACT OR PARCEL OF LAND LYING AND BEING IN THE 1601ST G.M. DISTRICT OF TATTNALL COUNTY, GEORGIA, CONTAINING 91 ACRES, MORE OR LESS, AS SHOWN ON PLAT PREPARED BY JAMES L. TOOTLE, SURVEYOR, DATED OCTOBER 28, 1954 AND RECORDED IN DEED BOOK 3-Y, PAGE 605, CLERK'S OFFICE, TATTNALL SUPERIOR COURT. SAID PLAT IS INCORPORATED HEREIN BY REFERENCE AND MADE A PART HEREOF.

### TRACT SIX (6)

ALL THAT TRACT OR PARCEL OF LAND LYING AND BEING IN THE 1601ST G.M. DISTRICT OF TATTNALL COUNTY, GEORGIA CONTAINING 57.51 ACRES, MORE OR LESS, AS SHOWN ON PLAT PREPARED BY TIMOTHY W. EASON, DATED MAY 8, 1995 AND RECORDED IN PLAT BOOK 14, PAGE 182-A, CLERK'S OFFICE, TATTNALL SUPERIOR COURT.  SAID PLAT IS INCORPORATED HEREIN BY REFERNCE AND MADE A PART HEREOF.

BOOK 0 4 6 1 PAGE 7 4 9

#2096

FILED-TATTNALL CO.
CLERK'S OFFICE

03 JUL -2 PH 12: 31

Martha Crews
CLERK OF COURTS

---

Please return to:  Glen A. Cheney, P.C., Post Office Box 1548, Reidsville, Georgia 30453, File #: 7151

---

**STATE OF GEORGIA**                                    **QUITCLAIM DEED**

**COUNTY OF TATTNALL**

   **THIS INDENTURE** , made and entered into on the 2nd, day of July, 2003, between

**THE TATTNALL BANK**, a banking corporation organized to do business under the laws of the State of

Georgia, party of the first part, and **GEORGE W. FOWLER AND VIRGINIA S. FOWLER**, of Tattnall

County, Georgia, parties of the second part,

   **WITNESSETH:**

   That for and in consideration of the sum of Ten Dollars and other good and valuable considerations,

paid by the parties of the second part to the party of the first part, the receipt whereof is hereby

acknowledged, the said party of the first part does hereby give, grant, remise, release, and forever quitclaim

unto the said GEORGE W. FOWLER AND VIRGINIA S. FOWLER, parties of the second part, their heirs,

executors, administrators, and assigns the following described lands, to-wit:

   All that tract or parcel of land lying and being in the 41 st G.M. District, Tattnall County,
   Georgia, containing 34.046 acres of land, more or less, and being bounded, now or formerly
   as follows: On the North by lands of Bobby Collins, Collins Holding Co., and North Tattnall
   County Band Boosters; on the East by lands of George W. Fowler and Virginia S. Fowler;
   on the South by lands of Peggy Lavern Rewis; and on the West by the run of Little Thomas
   Creek and lands of Continental Can Co.  Said tract of land is described as Tract 2 on that
   map or plat of survey prepared by John O. Parker, Georgia Registered Land Surveyor No.
   1850, dated the 19th day of June, 2003, and recorded in Plat Book **22**, Page **81**, in
   the office of the Clerk of Superior Court of Tattnall County, Georgia. Said plat is by
   reference incorporated herein for a more complete and accurate description of the
   aforementioned property.

   Said property contains a 15 foot easement to Georgia Power Company, which lies on the
   northerly border of property.

   **THE PURPOSE OF THIS QUITCLAIM DEED IS TO RELEASE THE ABOVE-
   MENTIONED PROPERTY FROM THAT CERTAIN DEED TO SECURE DEBT**

BOOK 0 4 6 1 PAGE 7 4 9

#2096

FILED-TATTNALL CO.
CLERK'S OFFICE

03 JUL -2 PM 12: 31

Darria Crews
CLERK OF COURTS

Please return to:  Glen A. Cheney, P.C., Post Office Box 1548, Reidsville, Georgia 30453, File #: 7151

STATE OF GEORGIA                                        QUITCLAIM DEED

COUNTY OF TATTNALL

THIS INDENTURE , made and entered into on the 2nd, day of July, 2003, between THE TATTNALL BANK, a banking corporation organized to do business under the laws of the State of Georgia, party of the first part, and GEORGE W. FOWLER AND VIRGINIA S. FOWLER, of Tattnall County, Georgia, parties of the second part,

WITNESSETH:

That for and in consideration of the sum of Ten Dollars and other good and valuable considerations, paid by the parties of the second part to the party of the first part, the receipt whereof is hereby acknowledged, the said party of the first part does hereby give, grant, remise, release, and forever quitclaim unto the said GEORGE W. FOWLER AND VIRGINIA S. FOWLER, parties of the second part, their heirs, executors, administrators, and assigns the following described lands, to-wit:

All that tract or parcel of land lying and being in the 41 ˢᵗ G.M. District, Tattnall County, Georgia, containing 34.046 acres of land, more or less, and being bounded, now or formerly as follows: On the North by lands of Bobby Collins, Collins Holding Co., and North Tattnall County Band Boosters; on the East by lands of George W. Fowler and Virginia S. Fowler; on the South by lands of Peggy Lavern Rewis; and on the West by the run of Little Thomas Creek and lands of Continental Can Co.  Said tract of land is described as Tract 2 on that map or plat of survey prepared by John O. Parker, Georgia Registered Land Surveyor No. 1850, dated the 19ᵗʰ day of June, 2003, and recorded in Plat Book _22_ , Page _81_ , in the office of the Clerk of Superior Court of Tattnall County, Georgia. Said plat is by reference incorporated herein for a more complete and accurate description of the aforementioned property.

Said property contains a 15 foot easement to Georgia Power Company, which lies on the northerly border of property.

**THE PURPOSE OF THIS QUITCLAIM DEED IS TO RELEASE THE ABOVE-MENTIONED PROPERTY FROM THAT CERTAIN DEED TO SECURE DEBT**

BOOK 0468 PAGE 504

FILED-TATTNALL CO. 3391
CLERK'S OFFICE

03 NOV 18  AM 11: 25

Debbie Crews
CLERK OF COURTS

*******************************************************************************************

RETURN TO: Rabo AgriFinance.
PO Box 410650
St Louis MO 63141

GRANTOR: U S Bank Trust National Association

GRANTEE: Wend Lease Agri-Business Inc

DATE OF INSTRUMENT: _____

TYPE OF INSTRUMENT: ( )   WARRANTY DEED
   ( )   DEED TO SECURE DEBT
   ( )   CANCELLATION ---- DEED BOOK _____ PAGE _____
   (X)   ASSIGNMENT ---- DEED BOOK __461__ PAGE 739-746
   ( )   POWER OF ATTORNEY
   ( )   QUITCLAIM DEED
   ( )   PARTIAL RELEASE
   ( )   EASEMENT
   ( )

OTHER: _____

NOTE: THIS COVER PAGE IS FOR RECORDING PURPOSES ONLY AND DOES NOT MODIFY OR AMEND THE TERMS OF THE ATTACHED INSTRUMENT

BOOK 0 4 6 8 PAGE 5 0 5

## Assignment of Security Deed

KNOW ALL MEN BY THESE PRESENTS: That U.S. Bank Trust National Association, as Custodian/Trustee for value received does hereby grant, bargain, sell, assign, transfer and set over unto U.S. Bank National Association, as Custodian/Trustee:

c/o Lend Lease Agri-Business, Inc.
12747 Olive Street Road, Suite 350
St. Louis, Missouri 63141

that certain Security Deed bearing date the 23rd day of June 2003, made and executed by Lois F. Lynn and Cynthia Lynn, as mortgagor to Lend Lease Agri-Business, Inc. to secure the sum of $527,000.00 and interest, and recorded in the office of the County Auditor of Tattnall County, State of Georgia on the 2nd day of July 2003, in Book 461 of Security Deeds, at page 739-746, and was erroneously assigned to U.S. Bank Trust National Association, as Custodian/Trustee by Assignment dated June 23, 2003 and recorded in the office of the County Auditor of Tatnall County, State of Georgia on the 2nd day of July 2003, in Book 461, page 747 together with the note thereby secured and the money due and to grow due thereon, with the interest. Therefore this Assignment of Security Deed is to correct the assignment of that certain Security Deed described above and is to correctly assign the Security Deed described above to U.S. Bank National Association, as Custodian/Trustee.

Dated: ___10/15/03___          Executed Under Seal.

Signed, sealed and delivered          U.S. Bank Trust National Association, as
                                       Custodian/Trustee   (Seal)
in the presence of:

_Tammy L. Wilde_            By: _J.L. Stal_
__Witness__                Its: _Senior Corporate Counsel_